IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| FOLIAR NUTRIENTS, INC., BIG BEND AGRI-SERVICES, INC., and MONTY FERRELL,<br><br>        Plaintiffs,<br>v.<br><br>NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,<br><br>        Defendant. | Case No. 1:14-cv-00075-WLS |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

LATHROP & GAGE LLP
A. Justin Poplin    GA #142033
jpoplin@lathropgage.com
Michael J. Abrams   (Admitted *pro hac vice*)
mabrams@lathropgage.com
Kimberly K. Winter   (Admitted *pro hac vice*)
kwinter@lathropgage.com
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2684
(816) 292-2000 – Telephone
(816) 292-2001 – Facsimile

ATTORNEYS FOR PLAINTIFFS

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF UNCONTROVERTED FACTS .........................................................2

    A. Parties, Jurisdiction, and Venue ...............................................................2

    B. The Policies ...............................................................................................3

    C. The PFS Lawsuit/Underlying Counterclaim ............................................4

    D. The Coverage Claim .................................................................................6

III. APPLICABLE LAW AND LEGAL STANDARDS .......................................................7

    A. Applicable Law .........................................................................................7

    B. Summary Judgment Standard ...................................................................8

    C. Burden of Proof ........................................................................................9

    D. Interpretation of the Policies ....................................................................9

    E. Insurer's Duty to Defend ........................................................................10

IV. LEGAL ARGUMENT/COVERAGE ANALYSIS .......................................................11

    1. Allegations in PFS's Counterclaim Fall Squarely Within the Disparagement Prong of the "Personal and Advertising Injury" Section of the CGL Policy .......................................................................11

    2. NABIC Has No Viable Defenses and Cannot Meet its Burden to Prove Any Exclusion Applies ................................................................14

V. CONCLUSION ...................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Family Life Assur. Co. of Columbus, Ga. v. U.S. Fire Co.*,
  885 F.2d 826 (11th Cir. 1989) ....................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................. 8, 9

*Bituminous Cas. Corp. v. Advanced Adhesive Technology, Inc.*,
  73 F.3d 335 (11th Cir. 1996) ................................................................................... 9, 10

*Bituminous Cas. Corp. v. Northern Ins. Co. of New York*,
  548 S.E.2d 495 ........................................................................................................... 13

*Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*,
  498 S.E.2d 492 (Ga. 1998) .................................................................................. 10, 14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..................................................................................................... 8

*Colony Ins. Co. v. Corrosion Control, Inc.*,
  390 F. Supp. 2d 1337 (M.D. Ga. 2005) .............................................................. 10, 12

*Delacruz v. Peninsula State Bank*,
  221 So. 2d 772 (Fla. 2nd DCA 1969) ....................................................................... 12

*Essex Ins. Co. v. H & H Land Development Corp.*,
  525 F. Supp. 2d 1344 (M.D. Ga. 2007) ...................................................................... 9

*Federated Rural Elec. Ins. Exch. v. R.D. Moody and Assoc., Inc.*,
  391 F. Supp. 2d 1228 (M.D. Ga. 2005) ...................................................................... 7

*Foliar Nutrients, Inc. v. Plant Food Systems, Inc.*,
  Case No. 6:13-cv-748-orl-37KRS .......................................................................... 1, 2

*HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*,
  701 F.3d 662 (11th Cir. 2012) ................................................................................... 11

*Hutson v. Rent-a-Center, Inc.*,
  209 F. Supp. 2d 1353 (M.D. Ga. 2001) ...................................................................... 9

*Irby v. Bittick*,
  44 F.3d 949 (11th Cir.1995) ........................................................................................ 9

*Johnson v. Occidental Fire and Cas. Co. of N. Carolina*,
   954 F.2d 1581 (11th Cir. 1992) ................................................................................. 7

*Kay-Lex Co. v. Essex Ins. Co.*,
   649 S.E.2d 602 (Ga. Ct. App. 2007) ..................................................................... 9, 14

*Kilgore Ace Hardware, Inc. v. Newsome*,
   352 So. 2d 918 (Fla. 2nd DCA 1977) ..................................................................... 13

*Landmark Am. Ins. Co. v. Khan*,
   705 S.E.2d 707 (Ga. Ct. App. 2011) ....................................................................... 10

*Lime Tree Village Community Club Ass'n, Inc. v. State Farm Gen'l Ins. Co.*,
   980 F.2d 1402 (11th Cir. 1993) ............................................................................... 12

*Miami Herald Pub. Co. v. Ane*,
   423 So. 2d 376 (Fla. 3rd DCA 1982) ...................................................................... 13

*N. Metro Directories Pub., LLC v. Cotton States Mut. Ins. Co.*,
   631 S.E.2d 726 (Ga. App. 2006) ................................................................. 10, 11, 14

*Nationwide Mut. Fire Ins. Co. v. Somers*,
   591 S.E.2d 430 (Ga. App. 2003) ............................................................................. 10

*Penn-America Ins. Co. v. Disabled Am. Veterans, Inc.*,
   490 S.E.2d 374 (Ga. 1997) ......................................................................... 10, 12, 13

*Walker v. Darby*,
   911 F.2d 1573 (11th Cir. 1990) ................................................................................. 9

*Webb v. Athens Newspapers, Inc.*,
   999 F. Supp. 1464 (M.D. Ga. 1998) .......................................................................... 9

**Statutes**

28 U.S.C. § 1332 ................................................................................................................ 2

28 U.S.C. § 1391 ................................................................................................................ 3

15 U.S.C. § 1125 (the "Lanham Act") .................................................................... 1, 5, 11

**Other Authorities**

Fed. R. Civ. P. 56(c) .......................................................................................................... 8

Local Rule 3.4 .................................................................................................................... 3

I.     **INTRODUCTION**

Plaintiffs Big Bend Agri-Services, Inc., Foliar Nutrients, Inc., and Monty Ferrell (collectively "Big Bend") have brought a declaratory judgment action against their insurer, Nationwide Agribusiness Insurance Company ("NABIC"). The primary issue is whether allegations asserted in the counterclaim filed against Big Bend in the underlying litigation (styled *Foliar Nutrients, Inc. v. Plant Food Systems, Inc., et al*, Case No. 6:13-cv-748-orl-37KRS, filed in the United States District Court for the Middle District of Florida) (hereafter the "PFS Lawsuit") trigger NABIC's duty to defend Big Bend under the Personal and Advertising Injury Liability coverage section of its policy.

In the PFS Lawsuit, PFS alleges, in pertinent part, that Big Bend made allegedly disparaging and false comments about PFS and the fertilizer products PFS sold and manufactured. PFS claims that Big Bend told PFS customers that they would be subject to "expensive and time consuming litigation" if they purchased and used PFS's products. PFS further claims that Big Bend's actions "constitute false and misleading descriptions of fact and representations of fact about . . . PFS' product." The PFS Lawsuit seeks damages under various theories, including unfair competition and Lanham Act violations.

Big Bend contends that the allegations in the PFS Lawsuit regarding disparagement of PFS and its products and unfair competition fall within the "Personal and Advertising Injury" coverage of the NABIC policy, and require that NABIC provide Big Bend a defense to the counterclaim in the PFS Lawsuit. Specifically, the NABIC Policy covers claims arising from "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a people or organization's goods, products or services."

Big Bend promptly notified NABIC of the counterclaim filed in the PFS Lawsuit, and demanded that NABIC defend it. However, NABIC has denied any obligation to defend,

primarily citing various policy exclusions as precluding coverage. NABIC's failure to defend Big Bend in the PFS Lawsuit is without just cause or excuse and constitutes a breach of NABIC's policy. The material facts are uncontroverted and by this motion Big Bend seeks summary judgment in its favor declaring that NABIC is obligated to pay Big Bend's total outstanding and future defense costs incurred or to be incurred in defense of the counterclaim filed against Big Bend in the PFS Lawsuit.

## II.     STATEMENT OF UNCONTROVERTED FACTS

### A.     Parties, Jurisdiction, and Venue

1. Plaintiff Foliar Nutrients, Inc. is a corporation organized and existing under the laws of the State of Georgia and has its principal place of business at 320 First Avenue, Cairo, Grady County, Georgia 39828. Foliar Nutrients, Inc. is qualified to do business in Georgia and is in good standing under the laws of the State of Georgia.

2. Plaintiff Big Bend Agri-Services, Inc. is a corporation organized and existing under the laws of the State of Georgia and has its principal place of business at 320 First Avenue, Cairo, Grady County, Georgia 39828. Big Bend Agri-Services, Inc. is qualified to do business in Georgia and is in good standing under the laws of the State of Georgia.

3. Monty Ferrell is an individual citizen of the United States and executive officer of Foliar Nutrients, Inc., with a permanent residence in Georgia.

4. NABIC is an insurance company authorized to do business in Georgia.

5. This is an insurance coverage action for declaratory relief and breach of contract, arising out of NABIC's refusal to defend Big Bend against the counterclaim filed by PFS (the "PFS Counterclaim") in a lawsuit styled *Foliar Nutrients, Inc. v. Plant Food Systems, Inc.*, et al, Case No. 6:13-cv-748-orl-37KRS, filed in the United States District Court for the Middle District of Florida (the "PFS Lawsuit").

6. The Court has jurisdiction over these claims under 28 U.S.C. § 1332.

7. Venue is proper in this Court under 28 U.S.C. § 1391 and Local Rule 3.4 because corporations are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced. NABIC issued an insurance policy to Big Bend in the Albany Division of this Judicial District, among other things.

8. Pursuant to Local Rule 3.4, venue is also proper in the division where the plaintiff resides or the claim arose. Big Bend resides in the Albany Division of this Judicial District by virtue of its substantial presence in Grady County, Georgia.

B. **The Policies**

9. In consideration of premium paid, NABIC issued to named insureds Big Bend Agri-Services, Inc. and Foliar Nutrients, Inc. in Georgia, and Monty Ferrell, as executive officer of Foliar Nutrients, a Commercial General Liability ("CGL") policy, effective July 1, 2012 to July 1, 2013, with policy number CPP119071A (the "CGL Policy"). The CGL Policy was renewed for another annual term on July 1, 2013. A true and accurate copy of the CGL Policy was previously attached to Plaintiffs' Complaint filed in this case as **Exhibit A** (Document 1-2).

10. In consideration of premium paid, NABIC also issued to named insureds Big Bend Agri-Services, Inc. and Foliar Nutrients, Inc. in Georgia, and Monty Ferrell, as executive officer of Foliar Nutrients, a Commercial Liability Umbrella policy, effective July 1, 2012 to July 1, 2013, with policy number CU 11907A (the "Umbrella Policy"). The Umbrella Policy was renewed for another annual term on July 1, 2013. A true and accurate copy of the Umbrella Policy was previously attached to Plaintiffs' Complaint filed in this case as **Exhibit B** (Document 1-3).

11. The CGL Policy provides for defense and indemnity of certain third-party claims against Big Bend. Specifically, NABIC has the "right and duty to defend the insured against any 'suit' seeking" damages because of "'personal and advertising injury' to which this insurance applies. . . ." See **Exhibit A**.

12. The insuring agreement language for "Coverage B Personal and Advertising Injury Liability" in the CGL Policy states as follows:

> [NABIC] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.***

**Exhibit A**.

13. "Personal and advertising injury" is defined under both the CGL Policy and the Umbrella Policy to include "injury . . . arising out of one or more of the following offenses: d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a people or organization's goods, products or services." **Exhibits A** and **B**.

C.   **The PFS Lawsuit/Underlying Counterclaim**

14. On May 10, 2013, Big Bend filed a complaint against its competitor, PFS, in the U.S. District Court for the Middle District of Florida, alleging primarily infringement of patents related to its fertilizer products. PFS filed an answer and counterclaim on August 13, 2013 (the "Original PFS Counterclaim"). A copy of the Original PFS Counterclaim was previously attached to Plaintiffs' Complaint filed in this case as **Exhibit C** (Document 1-4).

15. A few days thereafter, on or about August 23, 2013, Big Bend notified NABIC of the Original PFS Counterclaim and demanded a defense to the same.

16. On July 29, 2014, PFS filed an Amended Answer and Counterclaim which contains virtually the same allegations pertinent to this coverage dispute as the Original PFS Counterclaim, although the page and paragraph numbering has changed. The Amended Answer and Counterclaim is attached hereto as **Exhibit D.** The Original Counterclaim PFS Counterclaim and Amended PFS Counterclaim are referred to herein jointly as the "PFS Counterclaim."

17. The PFS Counterclaim accuses Big Bend of, among other things, Lanham Act violations, tortious interference, unfair competition, "false and misleading descriptions of fact and representations of fact about its own and PFS' product," "contact[ing] PFS' customers and [telling] them that Foliar was in litigation with PFS and they should not purchase the PFS product" despite there being no litigation at that time, and "wrongfully coerc[ing] and threaten[ing] the actual and prospective customer of PFS . . . that, if they purchased and used the fertilizer products of PFS, they and their customers would be subjected to expensive and time consuming litigation. . . ." See, **Exhibit C**, page 37, paragraph 34 and pages 46-47, paragraph 93; **Exhibit D** at page 39, paragraph 35 and page 49, paragraph 97.

18. Specifically, Paragraph 34 of the Original PFS Counterclaim and Paragraph 35 of the Amended PFS Counterclaim, which are each re-alleged and incorporated into every subsequent count of the Original and Amended PFS Counterclaim state: "In early 2013, Foliar's representative in Florida contacted PFS' customers and told them that Foliar was in litigation with PFS and they should not purchase the PFS product. There was no litigation at the time. . . ." **Exhibit C** at page 37, paragraph 34; **Exhibit D** at page 39, paragraph 35.

19. The PFS Counterclaim, which alleges Lanham Act violations under 15 U.S.C. § 1125, states that Big Bend "intentionally, wrongfully and without any privilege or

justification interfered with the advantageous business relationships PFS has enjoyed with its customers" by "falsely contending that the fertilizer products sold by PFS infringe upon the patents held by Foliar for certain fertilizer products.  Such conduct is unfair competition and a deceptive trade practice. . . ." **Exhibit C** at pages 46-47, paragraph 93; **Exhibit D** at page 47, paragraph 85.

20. The PFS Counterclaim alleges that "Foliar has wrongfully coerced and threatened the actual and prospective customers of PFS. . . that if they purchased and used the fertilizer products of PFS, they and their customers would be subjected to expensive and time consuming litigation. . . ." **Exhibit C** at page 47, paragraph 94; **Exhibit D** at page 47, paragraph 86.

21. The PFS Counterclaim alleges that Big Bend's actions "constitute false and misleading descriptions of fact and representations of fact about its own and PFS' product." "These misrepresentations have actually deceived or have had the tendency to deceive a substantial segment of Foliar's intended audience and were placed in interstate commerce by Foliar.  PFS has been damaged and is likely to be further damaged as a result of these misrepresentations by the direct diversion of sales or by the lessening of the goodwill associated with its products."  **Exhibit C** at page 47, paragraph 95; **Exhibit D** at page 47-48, paragraph 87.

22. The PFS Counterclaim alleges that "PFS has sustained damages as a direct and proximate cause of Foliar's tortious acts and unfair competition."  **Exhibit C** at page 47, paragraph 98; **Exhibit D** at page 48, paragraph 90.

23. Big Bend has denied and continues to deny any wrongdoing, intentional or otherwise, in response to the PFS Counterclaim.  A copy of Big Bend's Answer to the Original PFS Counterclaim is attached hereto as **Exhibit E**.

**D.     The Coverage Claim**

24.     NABIC first denied it had a duty to defend Big Bend under the CGL and Umbrella Policies in a letter dated December 5, 2013, alleging, among other things that the "Counterclaim does not trigger coverage under either of the NABIC policies" and "the only offenses coming within the definition of 'personal and advertising injury' are infringement of trade dress or slogan in the insured's advertisement which is not at issue here."

25.     After Big Bend made multiple unsuccessful attempts to persuade NABIC to accept its coverage obligations in the PFS Lawsuit, Big Bend filed a complaint in this Court on May 13, 2014.

26.     Big Bend is seeking a declaratory judgment that NABIC has a legal obligation to defend Big Bend under the CGL Policy for the counterclaim alleged against it in the PFS Lawsuit.

## III.    APPLICABLE LAW AND LEGAL STANDARDS

**A.     Applicable Law**

Georgia law applies to the interpretation of the NABIC policies issued to Big Bend in Georgia. In diversity cases, courts apply the choice of law rules of the forum state. *Am. Family Life Assur. Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989) (citations omitted). Under Georgia's choice of law rules, "interpretation of insurance contracts is governed by the law of the place of making." *Id*. (internal citation omitted). Georgia courts have held that the last act essential to the completion of an insurance contract is delivery, accordingly, "insurance contracts are considered made at the place where the contract is delivered." *Federated Rural Elec. Ins. Exch. v. R.D. Moody and Assoc., Inc.*, 391 F. Supp. 2d 1228, 1230 (M.D. Ga. 2005) (citing *Johnson v. Occidental Fire and Cas. Co. of N. Carolina*, 954 F.2d 1581, 1584 (11th Cir. 1992)). Here, because the insurance policies were delivered to Big Bend in

Georgia, Georgia substantive law controls the resolution of this coverage action. (SOF 1-3, 9-10).

Although the coverage issues must be resolved according to Georgia law, the underlying lawsuit is pending in Florida (SOF 14) and the PFS Counterclaim alleges that Florida agents of Big Bend made misrepresentations to PFS customers (SOF 18), therefore, it appears that Florida law should apply to the allegations against Big Bend in the underlying PFS Lawsuit. In other words, in order to determine whether the insured, Big Bend, has any potentially covered liability in the underlying litigation that triggers NABIC's duty to defend that action, this Court should consider the factual allegations of the PFS Counterclaim in light of the substantive law of Florida.

### B. Summary Judgment Standard

The Court should grant a motion for summary judgment if there is "no genuine issue as to any material fact," and if the moving party is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court's function at this stage is not to weigh the evidence and determine the truth of the matter, but to determine whether a genuine factual issue exists for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

The burden placed on the non-moving party is not a light one. Summary judgment is an important procedure "designed to secure the just, speedy and inexpensive determination of every action," not a disfavored procedural shortcut. *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).  In other words, "[t]he nonmoving party must put forth more than a 'mere 'scintilla' of evidence; 'there must be enough of a showing that the jury could reasonably find for that party.'" *Hutson v. Rent-a-Center, Inc.*, 209 F. Supp. 2d 1353, 1355 (M.D. Ga. 2001) (citing *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

Genuine disputes are those where the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

> While the evidence and all factual inferences therefrom must be viewed by the Court in the light most favorable to the party opposing the motion, that party cannot rest on its pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the Court that there are material facts present in the case that must be presented to a jury for resolution.

*Webb v. Athens Newspapers, Inc.*, 999 F. Supp. 1464, 1466 (M.D. Ga. 1998) (citation omitted). "The party opposing summary judgment must show that there is more than simply some metaphysical doubt about the material facts." *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir.1995).

### C. Burden of Proof

The insured has the initial burden of proving that its loss is covered under the policy. *Essex Ins. Co. v. H & H Land Development Corp.*, 525 F. Supp. 2d 1344, 1345 (M.D. Ga. 2007). Once the insured meets its burden, "the insurer bears the burden of showing that a fact situation falls within an exclusionary clause of an insurance policy." *Kay-Lex Co. v. Essex Ins. Co.*, 649 S.E.2d 602, 606 (Ga. Ct. App. 2007) (internal citations omitted.).

### D. Interpretation of the Policies

The interpretation of an insurance policy is a legal question for the court to address. *Bituminous Cas. Corp. v. Advanced Adhesive Technology, Inc.*, 73 F.3d 335, 337 (11th Cir.

1996).  In resolving a coverage dispute, an insurance policy is governed by the ordinary rules of contract construction.  *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 498 S.E.2d 492, 494 (Ga. 1998); *N. Metro,* 631 S.E.2d at 729.  In resolving a coverage dispute, "[a]n insurance policy is governed by the ordinary rules of contract construction. . . ." *N. Metro,* 631 S.E.2d at 729 (internal citations omitted).  When policy language is ambiguous due to duplicity, indistinctness or uncertainty or meaning or expression, i.e., if it "may be fairly understood in more ways than one," the court must strictly construe such ambiguities against the insurer.  *Id.* (internal citations omitted).  Additionally, "any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible." *Boardman,* 498 S.E.2d at 494. (internal citation omitted).

### E.    Insurer's Duty to Defend

In Georgia, as in most jurisdictions, an insurer's duty to defend is quite broad; broader than its duty to indemnify.  If the facts as alleged in the complaint "*might potentially or arguably* fall within the policy's coverage," the insurer has a duty to defend the action.  *Colony Ins. Co. v. Corrosion Control, Inc.*, 390 F. Supp. 2d 1337, 1339 (M.D. Ga. 2005) (emphasis added) (internal citation omitted); *see also Nationwide Mut. Fire Ins. Co. v. Somers,* 591 S.E.2d 430, 433 (Ga. App. 2003).  Stated another way:

> [T]he insurer is obligated to defend where . . . the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage. . . .  [T]he duty to defend exists if the claim potentially comes within the policy.  Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured.

*Penn-America Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997) (internal citations omitted).  *See also Landmark Am. Ins. Co. v. Khan*, 705 S.E.2d 707, 710 (Ga. Ct. App. 2011).  The key to determining whether the insurer must defend "is not whether the insured is

*actually liable* to the plaintiffs; the issue is whether a claim has been asserted which falls within the policy coverage." *N. Metro Directories Pub., LLC v. Cotton States Mut. Ins. Co.,* 631 S.E.2d 726, 729 (Ga. App. 2006) (emphasis in original) (internal citations omitted).

Finally, where an insurer has a duty to defend a single claim the complaint presents, it has a duty to defend *all* the claims asserted. *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012).

## IV. LEGAL ARGUMENT/COVERAGE ANALYSIS

### A. NABIC Has Breached the CGL Policy by Refusing to Defend Big Bend in the PFS Lawsuit

#### 1. Allegations in PFS's Counterclaim Fall Squarely Within the Disparagement Prong of the "Personal and Advertising Injury" Section of the CGL Policy

NABIC has breached the terms of the CGL Policy, by failing and refusing to defend Big Bend against the PFS Counterclaim.  While, admittedly, the PFS Lawsuit mainly involves claims related to patent infringement, in addition to these claims, and critical to the present litigation, the PFS Counterclaim includes allegations that Big Bend made disparaging remarks and misrepresentations about PFS and PFS's products to current and prospective customers.  See **Exhibits C** and **D**.

Specifically, Counts X, XI, XII and XIII of the Original PFS Counterclaim[1] state claims for unfair competition under the Lanham Act and tortious interference, asserting that Big Bend "wrongfully coerced and threatened the actual and prospective customers of PFS. . . that if they purchased and used the fertilizer products of PFS, they and their customers would be subjected to expensive and time consuming litigation. . . ."  (SOF 20).  PFS further alleges that Big Bend's actions "constitute false and misleading descriptions of fact and representations of fact about its

---

[1] Now counts IX, X, XI and XII of the Amended PFS Counterclaim.

- 11 -

own and PFS' products. . . ." (SOF 21).  The PFS Counterclaim also asserts that Big Bend falsely informed PFS's customers that Foliar was in litigation with PFS over issues related to PFS's products.  (SOF 18).  Because these allegations contained in the PFS Counterclaim at least potentially implicate coverage under the CGL Policy, NABIC has a duty to defend Big Bend against the PFS Counterclaim in its entirety.  *See Penn-America Ins. Co. v. Disabled Am. Veterans, Inc.*, *supra* at 376.

The CGL Policy provides coverage for "Personal and Advertising Injury" which is defined to include injury "arising out of one or more of the following offenses: d. oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."  (SOF 13; **Exhibit A**). Whether a particular count is labeled "slander," "libel," "disparagement," "unfair competition," "tortious interference," or something else is irrelevant to the coverage analysis.  The insurer must examine the factual allegations contained in the complaint rather than a particular label or title assigned each count.  *See, e.g., Colony*, *supra,* 390 F. Supp. 2d at 1339 (M.D. Ga. 2005) (factual allegations in the complaint that "*might potentially or arguably* fall within the policy's coverage," trigger the duty to defend); *Lime Tree Village Community Club Ass'n, Inc. v. State Farm Gen'l Ins. Co.,* 980 F.2d 1402 (11th Cir. 1993) (factual allegations, rather than the labels attached, trigger the duty to defend).

Under Florida law, which applies to the allegations against Big Bend in the underlying PFS Lawsuit, "[l]ibel and slander (or defamation as it may be loosely called) is a false and unprivileged publication of unfounded statements that injure a person." *Delacruz v. Peninsula State Bank,* 221 So. 2d 772, 775 (Fla. 2nd DCA 1969) (internal citations omitted).  Additionally, "it is now well recognized that . . . a corporation . . . may recover damages for injuries suffered

because of written or oral publication of false defamatory matter which tends to be prejudicial in the conduct of a trade or business or to deter third persons from dealing in business with [it]." *Kilgore Ace Hardware, Inc. v. Newsome,* 352 So. 2d 918, 920 (Fla. 2nd DCA 1977) (internal citations omitted) (holding corporation stated cause of action for trade libel or slander when it alleged it was damaged by employee's false statements about corporation's competency and ability to corporation's customers).

Florida, like the majority of jurisdictions, does not require a showing of "actual malice" as an element of defamation with regard to non-public figures, "it being sufficient if the plaintiff establishes . . . that the defendant published the alleged false and defamatory statements with negligence [i.e., without reasonable care as to whether the alleged false and defamatory statements were actually true or false]." *Miami Herald Pub. Co. v. Ane,* 423 So. 2d 376, 378 (Fla. 3rd DCA 1982) (brackets in original). Notably, while the PFS Counterclaim asserts that some of Big Bend's actions were "intentional," or "knowing" it also alleges that Big Bend's actions were merely "wrongful." (SOF 17, 19-20, **Exhibits C** and **D**).

Perhaps more importantly, Big Bend denies any wrongdoing, intentional or otherwise, and NABIC must defend even false, fraudulent or groundless claims against its insureds that potentially fall within coverage. (SOF 23; **Exhibit E**).

> Whether an insurer is obligated to defend an action against its insured is determined by the contract; and since the contract obligates the insurer to defend claims asserting liability under the policy[,] even if groundless, the allegations of the complaint are looked to to determine whether a liability covered by the policy *is asserted.* Thus, the issue is not whether the insured is *actually liable* to the plaintiffs [in the underlying action]; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend.

*Bituminous Cas. Corp. v. Northern Ins. Co. of New York,* 548 S.E.2d 495, 496-97 (brackets and emphasis in original), citing *Penn-America Ins. Co. v. Disabled Am. Veterans,* 481 S.E.2d 850 (Ga. App. 1997).

In light of the foregoing, it is clear that the PFS Counterclaim includes factual allegations sufficient to create potential liability for the common-law claim of trade slander under Florida law.  PFS alleges that it has been damaged by Big Bend's false and intentional or wrongful statements regarding PFS's ability to legally sell its product.  (SOF 21-22).  PFS also alleges that Big Bend falsely told PFS customers that PFS was in litigation regarding its products with Big Bend at a time when it was not, and threatened customers that they, too, would be subject to protracted and expensive litigation if they purchased PFS's products.  (SOF 18, 20-21).  In short, the PFS Counterclaim alleges "false and unprivileged publication of unfounded statements that injure a person" or corporation, and these allegations fall squarely within the "personal and advertising injury" section of the CGL Policy for "oral . . . publication . . . of material that slanders . . . a person or organization or disparages a person's or organization's goods, products or services."  As a result, NABIC's duty to defend the PFS Counterclaim is triggered.

### 2. NABIC Has No Viable Defenses and Cannot Meet its Burden to Prove Any Exclusion Applies

It is the insurer's burden to prove that an exclusion applies to a particular set of circumstances in order to deny its duty to defend.  *See, e.g., Kay-Lex Co. v. Essex Ins. Co.*, 649 S.E.2d 602 (Ga. Ct. App. 2007).

To the extent there is any ambiguity in an exclusion or limiting provision of the CGL Policy, that ambiguity must be resolved in favor of coverage.  If an insurer intends to restrict or limit coverage provided in a policy, it must use clear and unambiguous language in doing so. *See, e.g., Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 498 S.E.2d 492 (Ga. 1998).  In other words, if the policy language is capable of two meanings, it must be construed in favor of the insured.  *Id.*; *see also N. Metro Directories Pub., LLC v. Cotton States Mut. Ins. Co.,* 631 S.E.2d 726 (Ga. App. 2006).

NABIC cannot meet its burden in this matter. There is no applicable exclusion that eliminates the possibility of coverage under the CGL Policy and, therefore, NABIC must defend Big Bend against the PFS Counterclaim.

## V.  CONCLUSION

For the foregoing reasons, Big Bend respectfully requests that its Motion for Summary Judgment be granted and that it be awarded its incurred and unreimbursed defense fees and costs in the PFS Lawsuit from the date of the filing of the PFS Counterclaim, and that this Court declare that NABIC continues to have an ongoing duty to defend Big Bend in the PFS Lawsuit, along with post- and pre-judgment interest and any and other relief the Court deems just and necessary.

Date:  August 5, 2014                Respectfully submitted,

                                     LATHROP & GAGE LLP


                                     By:   /s/ Kimberly K. Winter
                                           Justin Poplin GA Bar No. 142033
                                           jpoplin@lathropgage.com
                                           Michael J. Abrams (admitted *pro hac vice*)
                                           mabrams@lathropgage.com
                                           Kimberly K. Winter (admitted *pro hac vice*)
                                           kwinter@lathropgage.com
                                           2345 Grand Boulevard, Suite 2200
                                           Kansas City, Missouri 64108-2618
                                           Telephone:  (816) 292-2000
                                           Telecopier:  (816) 292-2001

                                           ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

    This is to certify that, on this 5th day of August, 2014, the foregoing was electronically filed and served by the ECF Court filing system on the below named counsel:

Julius F. "Rick" Parker III
William L. Wallis
Butler Pappas Weihmuller Katz Craig, LLP
3600 Maclay Blvd., Suite 101
Tallahassee, FL 32312
jparker@butlerpappas.com
wwallis@butlerpappas.com

ATTORNEYS FOR DEFENDANT

                                          /s/ Kimberly K. Winter
                                          An Attorney for Plaintiff