IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

FOLIAR NUTRIENTS, INC., BIG BEND
AGRI-SERVICES, INC., and MONTY
FERRELL,

       Plaintiffs,                            Case No.: 1:14-cv-00075-WLS

vs.

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,

       Defendant.

_____/

### DEFENDANT, NATIONWIDE AGRIBUSINESS INSURANCE COMPANY'S REPLY TO PLAINTIFF'S RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant, NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, ("NABIC"), by and through undersigned counsel, pursuant to Middle District Rule 7.1, and submits the following Reply to Plaintiff's Omnibus Response to NABIC's Cross-Motion for Summary Judgment (dkt. #: 15).

**I.    The "Knowing Violation" Exclusion is Equivalent to an Intentional Acts Exclusion.**

Plaintiffs appear to argue that the "knowing violation" exclusion in the NABIC policy may not be triggered by the allegations that their actions were done intentionally in the underlying counterclaim.  However, courts throughout the country have routinely applied the "knowing violation" exclusion to intentional tort claims other than the ones specified in the definition of "personal and advertising injury" (to-wit: false arrest, detention or imprisonment, malicious prosecution, libel and slander).  *See e.g., Looney*

*Ricks Kiss Architects, Inc. v. Bryan*, 2014 WL 921781 (W.D. La. Mar. 10, 2014) (noting that, "The 'knowing violation of rights exclusion' has been classified as an intentional conduct exclusion."), citing 2 *Practical Tools for Handling Insurance Cases*, § 13:44; *Educational Training Systems, Inc. v. Monroe Guar. Ins. Co.*, 129 S.W.3d 850, 852 (Ky. Ct. App. 2003); *Signal Products, Inc. v. Am. Zurich Ins. Co.*, 2013 WL 6814847 (C.D. Cal. Dec. 19, 2013) (applying "knowing violation" exclusion where insured was found to have acted "willfully" in underlying action); *Caremedic Systems, Inc. v. Hartford Cas. Ins. Co.*, 2008 WL 912437 (M.D. Fla. Apr. 1, 2008) (applying "knowing violation" exclusion to insurer's duty to defend complaint which alleged insured acted intentionally and knowingly).  In this case, all of the Counts of the counterclaim at issue here allege that the insureds acted "intentionally."   Therefore, the "knowing violation" exclusion clearly applies to bar all coverage under the NABIC policy, regardless of whether the allegations of supposed disparagement state an "offense" within Coverage B.

## II.     The "Infringement of Trademark" Exclusion Bars Coverage for all Counts of the Counterclaim.

The heart of Plaintiffs' argument is that Counts IX and X are really claims for libel and/or slander and not claims for infringement of trademark.  That argument is the only way they could possibly avoid the "knowing violation" and "infringement of trademark" exclusions.  Their citation to in *Lincoln Nat'l Health & Cas. Ins. Co. v. Brown*, 782 F.Supp. 110 (M.D. Ga. 1992) demonstrates why that is the case.  *Lincoln National* involved the question of coverage under a general liability policy issued to a municipality for a civil rights claim.  The policy was similar to the NABIC policy, in that it defined "personal injury" to include the torts of false arrest, malicious prosecution and assault and battery.  It also involved an "intentional injury" exclusion.  The Court held that the

2

Case 1:14-cv-00075-WLS   Document 27   Filed 09/22/14   Page 3 of 12


intentional injury exclusion did not bar coverage for a claim of assault and battery.  *Id.* at 112-113.  The Court purported to base its decision on an alleged "ambiguity" between the intentional injury exclusion and the definition of "personal injury."  But the result, finding coverage for assault and battery, was based on the inclusion of that specific offense in the definition of "personal injury" and therefore was not a wholesale abandonment of the intentional injury exclusion, but a proper reading of the policy. *Lincoln National* is therefore entirely consistent with the authorities cited above, all of which hold that the "knowing violation" exclusion bars coverage only where the complaint does not plead one of the covered offenses which require intent (*i.e.*, false arrest, malicious prosecution, etc.).

Here, Plaintiffs claim that the counterclaim seeks recovery for libel and/or slander (under the broad term "disparagement").  Thus, they seek to apply the reasoning of *Lincoln National* to find that the "knowing violation" and "infringement of trademark" exclusions do not apply to Counts IX and X.  The "knowing violation" exclusion's application to Counts IX through XII is discussed further *infra*.

In order to see why the "knowing violation" and "infringement of trademark" exclusions apply to Counts IX and X, a close examination of the precise allegations of those counts is helpful.  If the incorporated allegations are included, Count IX alleges:

**COUNT IX**
**VIOLATION OF THE LANHAM ACT 15 U.S.C. § 1125**
**(Against Foliar)**

80.     [¶ 35. In early 2013, Foliar's representative in Florida contacted PFS' customers and told them that Foliar was in litigation with PFS and they should not purchase the PFS product.  There was no litigation at the time and PFS wrote to Foliar and its agent warning them against such conduct.]

\*   \*   \*

84.     Foliar has intentionally, wrongfully and without any privilege or justification and in bad faith, violated the provisions of 15 U.S.C. § 1125(a), the Lanham Act. Pursuant to § 11 U.S.C. § 11256(a) [*sic*], and 28 U.S.C. § 1338(b), this Court has subject matter jurisdiction to adjudicate these claims.

85.     Foliar has intentionally, wrongfully and without any privilege or justification interfered with the advantageous business relationships PFS has enjoyed with its customers, specifically, Diamond Fertilizer, by falsely contending that the fertilizer products sold by PFS infringe upon the patents held by Foliar for certain fertilizer products.  Such conduct is unfair competition and a deceptive trade practice prohibited by 15 U.S.C. § 1125.

86.     Moreover, Foliar has wrongfully coerced and threatened the actual and prospective customers of PFS, including Diamond Fertilizer, and others, that, if they purchased and used the fertilizer products of PFS, they and their customers would be subjected to expensive and time consuming litigation initiated against them by Foliar.

87.     The actions by Foliar constitute false and misleading descriptions of fact and representations of fact about its own and PFS' product. … These actions are specifically prohibited and actionable under 15 U.S.C. § 1125(a)(1)(b).

\*   \*   \*

99.     Foliar's actions were committed in bad faith knowingly to cause actual and prospective customers of PFS to refrain from purchasing fertilizer products from PFS thus damaging PFS.

As is readily apparent, the counterclaim sets forth the facts on which it predicates the counterplaintiffs' right to relief, then alleges the precise causes of action on which they seek relief, *i.e.*, the Lanham Act, 15 U.S.C. §§ 1125 and 1125(a)(1)(b).  Plaintiffs here seek to have the Court read an additional basis for relief in those Counts, to-wit:

libel and/or slander.  Again, however, if the Court were to accept that invitation, it would have the effect of completely nullifying the infringement of trademark exclusion. Obviously, the Lanham Act provides a cause of action for product disparagement. Therefore, the NABIC policy, in order to exclude Lanham Act liability, added the infringement of trademark exclusion in order to avoid precisely what the Plaintiffs are attempting here, *i.e.*, conflating excluded allegations of Lanham Act product disparagement with the simple torts of libel and slander.

The Fourth and Sixth Circuits have rejected the precise argument made by the Plaintiffs here.  *See Superformance Int'l Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215 (4th Cir. 2003); *Liberty Corporate Capital Ltd. v. Security Safe Outlet, Inc.*, 937 F.Supp. 2d 891 (E.D. Ky. 2013), *aff'd*, 2014 WL 3973726 (6th Cir. Aug. 15, 2014).    In *Superformance*, the insured argued that claims of trademark infringement could be characterized as common law claims of "disparagement" and therefore satisfy the definition of "personal and advertising injury."   The Fourth Circuit rejected that argument, explaining:

> Superformance also argues that coverage should be provided because the complaints can be construed as alleging claims of product "disparagement" and "false advertising," both of which, it argues, are included in the Hartford policy's definition of "personal and advertising injury." We cannot, however, read Ford's complaint to allege disparagement of Ford's products, except as the result of the alleged dilution of its trademarks. Similarly, even though Superformance's marketing of its motor vehicles as Cobras could possibly be seen as a form of deceit underlying false advertising, the complaint does not allege false advertising but rather trademark infringement, trade dress infringement, trademark dilution, and related unfair competition.

*Superformance*, 332 F.3d at 223.

5

Similarly, in *Liberty Corporate*, the insured was sued for trademark infringement under the Lanham Act.  Because the federal cause of action was for disparagement of the plaintiff's goods and products, allegations of disparagement were necessarily contained in the Lanham Act claims.  As the Plaintiffs do here, the insureds in *Liberty Corporate* argued that, because the complaint contained allegations of disparagement, those allegations stated a covered "offense" which was not excluded by the "infringement of trademark" exclusion.

The Court rejected that argument:

> … Because Counts II and III of BGS's complaint allege that SSO's use of the "Bud's Gun Shop" mark caused harm to – or disparaged – BGS's identity, reputation and good will, SSO argues that these allegations come within the coverage provided under "personal and advertising injury" for disparagement.  However, this argument ignores the clear and unambiguous language of the Policy precluding coverage for a claim arising out of the infringement of trademark or other intellectual property rights.  … Notwithstanding BGS's allegation that SSO's use of BGS's mark "disparaged" BGS's good will, BGS's claim in Count II is still a claim for trademark infringement, the very claim for which the Policy explicitly precludes coverage.

*Id.*, 937 F.Supp. 2d at 905-06.  That is the precise argument the Plaintiffs make here.  It should be rejected for precisely the same reasons.

District Courts in other jurisdictions have also embraced the logic of *Superformance*.  *See Western Int'l Syndication Corp. v. Gulf Ins. Co.*, 2004 WL 2580788 (C.D. Cal. Sept. 2, 2004) (applying *Superformance* to reject argument that disparagement allegations met the definition of "personal and advertising injury" as all allegations were made in support of claims of trademark infringement under the Lanham Act); *Citizens Ins. Co. of Am. v. Uncommon, LLC*, 812 F.Supp. 2d 905 (N.D. Ill. 2011).

The decision of the District Court in *Uncommon* is even more expansive than those of *Superformance* and *Liberty Corporate,* holding that common law claims which were separately pled were also barred by the trademark infringement exclusion because they could not have existed independent of the Lanham Act claims.  Here, the allegations of disparagement are not pled as separate causes of action, but rather in support of Counts IX and X which unambiguously allege violations of the Lanham Act.  As such, the infringement of trademark exclusion clearly applies to bar coverage for those Counts.

### III.   The "Knowing Violation" Exclusion Applies to Counts IX Through XII.

Plaintiffs apparent argument is that the only way the "knowing violation" exclusion can ever be triggered is if the complaint alleges, "Plaintiff's injuries were caused by or at the direction of the Defendant with knowledge that the act would violate the rights of the Plaintiff and would inflict 'personal and advertising injury'."  Nothing short of alleging the precise words of the exclusion will suffice in their view.  However, that argument falls short because, if it were accepted, the "knowing violation" exclusion would never be triggered.  This Court may not interpret the insurance policy in a way that renders any portion of it meaningless.  *See Shepherd v. Greer, Klosic & Daugherty*, 750 S.E.2d 463 (Ga. Ct. App. 2013); O.C.G.A. § 13-2-2.

The "knowing violation" applies to Counts IX through XII because the counterplaintiffs in the underlying suit chose to plead that the Plaintiffs here acted intentionally.  Despite their protestations that their denial of liability establishes the "fact" that they did not act intentionally, the counterclaim says they did.  Therefore, notwithstanding the fact that it is possible to prove a Lanham Act violation without

showing intent, here, the counterplaintiffs pled intentional violations.  Therefore, under *Hain v. Allstate Ins. Co.*, 471 S.E.2d 521 (Ga. Ct. App. 1996), the "knowing violation" exclusion nevertheless applies.

Perhaps the most interesting argument made by the Plaintiffs is that their denial of liability in their answer to the counterclaim somehow establishes as a "fact" that, if they did violate the counterplaintiffs' trademarks, they did not do so intentionally.  No citation to authority is provided for this astounding principle, for obvious reasons.  In the underlying case, there is a dispute of material fact, namely, whether the Plaintiffs here violated the counterplaintiffs' trademarks.  Pursuant to Rule 56, Federal Rules of Civil Procedure, resolution of that material issue of fact would have to be resolved by a jury.  If it were possible to determine coverage by resort to the insured's denials in its responsive pleading, then no claim would ever be covered, as insureds generally do not admit liability in their responsive pleadings.  If Plaintiffs' argument is stretched to its logical (or more properly illogical) conclusion, then their denial of all liability establishes as a fact that they did not violate the Lanham Act or any other law.  Therefore, no personal or advertising injury has occurred and the NABIC policy is accordingly not triggered at all.  The illogic of that argument is apparent on its face.

**IV.    The Counterclaim Alleges Intent to Injure**.

Finally, Plaintiffs contend that the counterclaim only alleges that the Plaintiffs intended to act, but does not allege that they intended for their actions to cause harm.  However, a cursory examination of the counterclaim demonstrates that this argument rests on a false premise.  Count IX, paragraph 91, states:

> Foliar's actions were committed in bad faith knowingly to cause actual and prospective customers of PFS to refrain

> from purchasing fertilizer products from PFS thus damaging
> PFS.

This paragraph clearly alleges that Foliar's actions were done with knowledge that they would cause damage to PFS  The intent element of the allegation leads directly to the injury, and is only removed by a single link in the chain of causation.  In other words, the fact that it alleges that the Plaintiffs knowingly caused PFS's customers to avoid purchasing its products, which in turn damaged PFS, does not mean the act was done without knowledge that it would result in damage.  The allegation could just as easily have been:

> Foliar's actions were committed in bad faith knowingly to
> cause damage to PFS due to actual and prospective
> customers of PFS refraining from purchasing fertilizer
> products from PFS.

This allegation is identical in substance to the allegation in paragraph 91.

Similarly, paragraph 104 of Count X states:

> Ferrell's actions were committed in bad faith to cause actual
> and prospective customers of PFS to refrain from purchasing
> fertilizer products from PFS.

Clearly, this paragraph alleges that Mr. Ferrell intended for his actions to have the effect of causing damage to PFS, via lowered sales of its products.  In other words, the intent to injure is inherent in the act itself.  *See Home Ins. Co. v. Hartford Fire Ins. Co.*, 164 Fed. Appx. 950 (11th Cir. 2006) (holding that where intent to injure is inherent in the intent to act, intentional acts exclusion bars coverage).  It is difficult to conceive how an allegation that the Plaintiffs acted with the intention of causing PFS's customers not to purchase its products could possibly be anything other than an intention to injure PFS.

9

As for Counts XI and XII, paragraphs 118 and 133 are identical to paragraph 104 above.  As such, intent to injure is clearly alleged for all of Counts IX through XII.

## Conclusion

Foliar Nutrients and Monty Ferrell decided to sue their competitors, Plant Food Systems, Inc. and Carl Fabry, for infringement of their patents.  Not surprisingly, PFS and Mr. Fabry countersued Foliar and Mr. Ferrell for trademark infringement and intentional interference with advantageous business relationships.  They now seek the aid of their liability insurer in defending against that counterclaim.

The counterclaim does not trigger coverage because the allegations of disparagement cannot be separated from the trademark infringement claims.  They were made in support of the counterclaimants' Lanham Act claims and therefore they are barred by the NABIC policy's infringement of trademark exclusion.  Furthermore, because all four of the Counts at issue here allege both intentional acts and intentional harm, the "knowing violation" exclusion in the NABIC policy bars coverage.

Based upon the foregoing, NABIC has no duty to defend Foliar and Mr. Ferrell against the counterclaim.

WHEREFORE, NABIC prays for entry of final summary judgment in its favor, declaring that it has no duty to defend Foliar Nutrients, Inc. or Monty Ferrell against the counterclaim filed against them by Plant Food Systems, Inc. and Carl Fabry, together with any other and further relief the Court deems just and proper.

Respectfully submitted,

BUTLER PAPPAS WEIHMULLER KATZ CRAIG, LLP

/s/ *Julius F. Parker III*_____
JULIUS F. PARKER III, ESQ.
Florida Bar No.: 0160857 (admitted *pro hac vice*)
KATHY J. MAUS, ESQ.
Florida Bar No.: 0896330 (admitted *pro hac vice*)
WILLIAM L. WALLIS, ESQ.
Georgia Bar Number: 717370
3600 Maclay Blvd., Suite 101
Tallahassee, Florida 32312
Phone: 850/894-4111
Fax: 850/894-4999
jparker@butlerpappas.com
kmaus@butlerpappas.com
wwallis@butlerpappas.com

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

FOLIAR NUTRIENTS, INC., BIG BEND
AGRI-SERVICES, INC. and MONTY
FERRELL,

     Plaintiffs,

vs.                           CASE NO.: 1:14-CV-75(WLS)

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,

     Defendant.
_____/

**CERTIFICATE OF SERVICE**

     This is to certify that I have this day served all parties with a copy of the within

and foregoing **REPLY TO PLAINTIFF'S RESPONSE TO NABIC's CROSS-MOTION**

**FOR SUMMARY JUDGMENT** via CM ECF to:

Justin Poplin, Esq.
Michael J. Abrams, Esq.
Kimberly K. Winter, Esq.
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
jpoplin@lathropgage.com
mabrams@lathropgage.com
kwinter@lathropgage.com

     This 22nd day of September, 2014.

                         /s/ *Julius F. Parker III*_____
                         JULIUS F. PARKER III, ESQ.