**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| FOLIAR NUTRIENTS, INC., BIG BEND AGRI-SERVICES, INC., and MONTY FERRELL, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:14-cv-00075-WLS |
| v. | ) | |
| | ) | |
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
<u>NABIC'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

LATHROP & GAGE LLP
A. Justin Poplin        GA #142033
jpoplin@lathropgage.com
Michael J. Abrams     (Admitted *pro hac vice*)
mabrams@lathropgage.com
Kimberly K. Winter   (Admitted *pro hac vice*)
kwinter@lathropgage.com
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2684
(816) 292-2000 – Telephone
(816) 292-2001 – Facsimile

ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ...................................................................................1

II.  UNDISPUTED MATERIAL FACTS ....................................................3

III.  LEGAL ARGUMENT/COVERAGE ANALYSIS.................................4

    A.  NABIC Owes Big Bend a Defense in the PFS Counterclaim under the "Personal and Advertising Injury" Section of the Policy Because PFS Alleged Covered "Disparagement".................................................4

        1.  NABIC's Duty to Defend is Broad ....................................4

        2.  The Policy Specifically Covers Traditionally Intentional Torts, including Libel, Slander, Disparagement of Goods, and Malicious Prosecution.............................................................5

        3.  Although There is No Count Titled "Disparagement," That is Irrelevant to the Coverage Determination; the PFS Counterclaim Includes Allegations Sufficient to Establish Covered Disparagement.............................................................6

        4.  No Allegations that Potentially Trigger Coverage are "Superfluous," Even if they are Incorporated by Reference into Each Count from the Introductory Paragraphs of the PFS Counterclaim. ......................................................................10

    B.  NABIC Cannot Meet its Burden to Prove that Any Exclusion Applies to Bar Coverage ....................................................................................10

        1.  The "Knowing Violation" Exclusion is Inapplicable...............11

            a.  The "Knowing Violation" Exclusion Only Precludes Knowing/Intentional Injury, it Does Not Preclude Unintended Injury Resulting from Intentional Acts ...................11

            b.  The PFS Counterclaim Does Not Allege Big Bend Specifically Knew it Would Cause PFS Personal and Advertising Injury, and Even If It Did, NABIC Could Not Refuse to Defend Because it Also Alleges Less Culpable Conduct and Big Bend Denies Any Wrongdoing........................14

        2.  The "Infringement of Copyright, Patent, Trademark or Trade Secret" Exclusion Is Inapplicable .......................................18

IV.  CONCLUSION ...................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Dridi*,
 2003 WL 23177502 (Conn. Super. Ct. Nov. 19, 2003) ....................................................8

*Am. Family Mut. Ins. Co. v. Pacchetti*,
 808 S.W.2d 369 (Mo. banc 1991) ....................................................................................12

*BASF AG v. Great Am. Assur. Co.*,
 522 F.3d 813 (7th Cir.2008) ..............................................................................................9

*Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*,
 498 S.E.2d 492 (Ga. 1998) ..............................................................................................10

*CareMedic Systems, Inc. v. Hartford Cas. Ins. Co.*,
 2008 WL 912437 (M.D. Fla., Apr. 1, 2008) ....................................................................12

*Colony Ins. Co. v. Corrosion Control, Inc.*,
 390 F. Supp. 2d 1337 (M.D. Ga. 2005) ................................................................1, 4, 7, 10

*Curtis-Universal, Inc. v. Sheboygan Emergency Med. Serv., Inc.*,
 43 F.3d 1119 (7th Cir. 1994) .............................................................................................7

*Decisionone Corp. v. ITT Hartford Ins. Group*,
 942 F. Supp. 1038 (E.D. Penn. 1996) ..............................................................................17

*Delacruz v. Peninsula State Bank*,
 221 So. 2d 772 (Fla. 2nd DCA 1969) ..............................................................................16

*Educational Training Systems, Inc. v. Monroe Guar. Ins. Co.*,
 129 S.W.3d 850 (Ky. Ct. App. 2003) ..............................................................................12

*Freightquote.com, Inc. v. Hartford Cas. Ins. Co.*,
 397 F.3d 888 (10th Cir. 2005) ...........................................................................................9

*Gooding v. Univ. Hosp. Bldg., Inc.*,
 445 So. 2d 1015 (Fl. 1997) ..............................................................................................16

*Hain v. Allstate Ins. Co.*,
 471 S.E.2d 521 (Ga. Ct. App. 1996) .................................................................................6

*Harleysville Worcester Ins. Co. v. Paramount Concrete*,
 10 F. Supp. 3d 252 (D. Conn. 2014) ...............................................................................12

*Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*,
  928 So. 2d 1006 (Ala. 2005)................................................................7, 8

*Hartford Fire Ins. Co. v. Vita Craft Corp.*,
  911 F. Supp. 2d 1164 (D. Kan. 2012) ...............................................8, 9, 10, 19

*Heart Mountain Irrigation Dist. v. Argonaut Ins. Co.*,
  295 Fed. App'x 298 (10th Cir. 2008)....................................................7

*Hudson Ins. Co. v. Colony Ins. Co.*,
  624 F.3d 1264 (9th Cir. 2010) .............................................................7

*Irons Home Builders, Inc. v. Auto-Owners Ins. Co.*,
  839 F. Supp. 1260 (E.D. Mich. 1993) ................................................17

*Kay-Lex Co. v. Essex Ins. Co.*,
  649 S.E.2d 602 (Ga. Ct. App. 2007) ..................................................10

*Landmark Am. Ins. Co. v. Khan*,
  705 S.E.2d 707 (Ga. Ct. App. 2011) ...................................................4

*Liberty Corp. Capital Ltd. v. Security Safe Outlet, Inc.*,
  937 F. Supp. 2d 891 (E.D. Ky. 2013)..................................................13

*Lime Tree Village Community Club Ass'n, Inc. v. State Farm Gen'l Ins. Co.*,
  980 F.2d 1402 (11th Cir. 1993)............................................................7

*Lincoln Nat. Health and Cas. Ins. Co. v. Brown*,
  782 F. Supp. 110 (M.D. Ga. 1992)................................................13, 14

*Looney Ricks Kiss Architects, Inc. v. Bryan*,
  2014 WL 931781 (W.D. La., Mar. 10, 2014) ....................................12

*Martco Ltd. Partnership v. Wellons, Inc.*
  588 F.3d 864 (5th Cir. 2009) ............................................................13

*McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*,
  989 S.W.2d 168 (Mo.1999) .................................................................9

*Mingachos v. CBS, Inc.*,
  491 A.2d 368 (1985) ...........................................................................12

*N. Metro Directories Pub., LLC v. Cotton States Mut. Ins. Co.*,
  631 S.E.2d 726 (Ga. App. 2006)....................................................4, 10

*Nationwide Mut. Fire Ins. Co. v. Somers*,
  591 S.E.2d 430 (Ga. App. 2003).........................................................4

*Orlando Nightclub Enterprises, Inc. v. James River Ins. Co.*,
   2007 WL 4247875 (M.D. Fla., Nov. 30, 2007) ...................................................13

*Penn-America Ins. Co. v. Disabled Am. Veterans, Inc.*,
   490 S.E.2d 374 (Ga. 1997) ...............................................................................4, 15

*Rogers v. Doody*,
   119 Conn. 532, 178 A. 51 (1935)...........................................................................12

*Ryland Group, Inc. v. Travelers Indem. Co. of IL*,
   2000 WL 33544086 (W.D. Texas 2000) .................................................................8

*Signal Products, Inc. v. Am. Zurich Ins. Co.*,
   2013 WL 6814847 (C.D. Cal., Dec. 19, 2013) .................................................12, 13

*Southern Guar. Ins. Co. v. Dowse*,
   605 S.E.2d 27 (Ga. 2004) .......................................................................................17

*State Dep't of Transp. & Pub. Facilities v. State Farm Fire & Cas. Co.*,
   939 P.2d 788 (Alaska 1997) .....................................................................................8

*State Farm Fire & Cas. Co. v. King Sports, Inc.*,
   827 F. Supp. 2d 1364 (N.D. Ga. 2011)...................................................................15

*State v. May*,
   670 So. 2d 1002 (Fla. 2d DCA 1996)....................................................................16

*Tamiami Trail Tours, Inc. v. J.C. Cotton*,
   463 So. 2d 1126 (Fla. 1985) ............................................................................16, 17

*Thompson v. Maryland Cas. Co.*,
   84 P.3d 496 (Colo. 2004)..........................................................................................8

*U.S. Fire Ins. Co. v. Hilde*,
   322 S.E.2d 285 (Ga. App. 1984) ...........................................................................14

*United Wats, Inc. v. Cincinnati Ins. Co.*,
   971 F. Supp. 1375 (D.Kan.1997) .............................................................................9

*Vector Products, Inc. v. Hartford Fire Ins. Co.*,
   397 F.3d 1316 (11th Cir. 2005)..............................................................................16

*Welch v. Gulf Ins. Co.*,
   190 S.E.2d 101 (Ga. App. 1972) ...........................................................................14

*West Am. Ins. Co. v. Merritt*,
   456 S.E.2d 225 (Ga. App. 1995)............................................................................11

*Westfield Cos. v. O.K.L. CanLine*,
  804 N.E.2d 45 (Ohio.App. 2003) ......................................................................... 11

*Yeomans & Assocs. Agency, Inc. v. Bowen Tree Surgeons, Inc.*,
  618 S.E.2d 673 (Ga. App. 2005) ............................................................... 2, 4, 17

**Statutes**

Lanham Act ............................................................... 2, 3, 5, 6, 11, 16, 18, 19

**Other Authorities**

*Allegations Determine Insurer's Duty to Defend*, 50 A.L.R.2d 458 (Originally
  published in 1956) ........................................................................................... 8

*Consequences of Liability Insurer's Refusal to Assume Defense of Action Against
  Insured Upon Ground That Claim Upon Which Action is Based is Not Within
  Coverage of Policy*, 49 A.L.R.2d 694 .......................................................... 17, 18

§ 6.1 *Knowing Violation of Right of Another*, Oh. Ins. Coverage (Aug. 2014) .......................... 11

Plaintiffs Big Bend Agri-Services, Inc., Foliar Nutrients, Inc., and Monty Ferrell (collectively "Big Bend") submit this Response in Opposition to Defendant Nationwide Agribusiness Insurance Company's ("NABIC") Cross-Motion for Summary Judgment.

## I.    INTRODUCTION

The current issue to be resolved in this coverage dispute is whether NABIC had a duty to defend Big Bend against the Counterclaim[1] asserted in the underlying litigation styled *Foliar Nutrients, Inc. v. Plant Food Systems, Inc., et al*, Case No. 6:13-cv-748-orl-37KRS, filed in the United States District Court for the Middle District of Florida) (hereafter the "PFS Lawsuit"). The PFS Lawsuit has now been resolved by confidential settlement and indemnity is not an issue.   Under Georgia law, NABIC was obligated to defend Big Bend against the PFS Counterclaim even if only one claim asserted therein was potentially or arguably covered.  *See, e.g., Colony Ins. Co. v.  Corrosion Control, Inc.*, 390 F. Supp. 2d 1337, 1339 (M.D. Ga. 2005).

The Policy's "personal and advertising injury" coverage section covers, in pertinent part, claims arising out of:

> Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.
> **Exhibit A.**

The PFS Counterclaim specifically alleged that PFS suffered damage when Big Bend made false comments and misrepresentations about PFS and PFS' products.  *See* **Exhibits C** and **D.**  These claims constitute covered disparagement and trigger NABIC's duty to defend Big Bend.

NABIC continues to deny its obligation to defend the PFS Counterclaim essentially for the following reasons: 1) the PFS Counterclaim alleges only intentional conduct, and Big Bend's

---

[1] PFS filed an Answer and Counterclaim against Big Bend on August 13, 2013.  On July 29, 2014, PFS filed an Amended Answer and Counterclaim which contains the same allegations pertinent to coverage as the initial counterclaim, with only the page and paragraph numbering changed.  Both pleadings will be referred to herein collectively as the "PFS Counterclaim."

denial of intentional wrongdoing is irrelevant, therefore, the "Knowing Violation" exclusion bars coverage "regardless of whether the allegations of supposed disparagement state an 'offense' under Coverage B"; 2) there is no count titled "libel," "slander," or "disparagement" (or any other specifically enumerated "personal and advertising injury" "offense"); 3) the allegations that constitute covered disparagement are "superfluous" because they are set forth in the preamble of the PFS Counterclaim and are "merely incorporated" by reference into the Lanham Act/unfair competition and tortious interference counts; and 4) the Lanham Act claims are barred by the "trademark infringement" exclusion in the Policy.

NABIC's position is unsupportable as it misconstrues the Policy, the allegations of the PFS Counterclaim, and fundamental principles of insurance law.  Although PFS accused Big Bend of certain "intentional" conduct, PFS' Counterclaim also included lesser culpability—wrongful, unfair, and unprivileged conduct, for example.  Moreover, NABIC cannot meet its burden to prove that the "Knowing Violation" exclusion is applicable because this exclusion does not preclude coverage for intentional *acts*; it only excludes coverage for knowingly or intentionally *causing injury*.  It is the latter that the insurer must prove in order to circumvent coverage.  Nowhere in the PFS Counterclaim does PFS allege that Big Bend knowingly or intentionally caused PFS harm.  Perhaps more importantly, even if *all* of the allegations in the PFS Counterclaim arguably fell within the "Knowing Violation" exclusion, NABIC still could not refuse to defend based solely upon PFS' allegations of intent because Big Bend denied any wrongdoing.  When coverage appears to be lacking on the face of the complaint, insurers are required to consider factual contentions presented by the insured in determining the duty to defend.  *See, e.g., Yeomans & Assocs. Agency, Inc. v. Bowen Tree Surgeons, Inc.,* 618 S.E.2d 673, 679-80 (Ga. App. 2005).

Second, it is widely held that titles or labels attached to counts are inconsequential for determining coverage, so it is irrelevant to this dispute that none of the counts are labeled "libel" or "slander."  It is the factual content of the claim that is critical, not the legal theories alleged.

Third, the fact that certain allegations are incorporated by reference into the counts rather than being repeated each time is irrelevant, as insurers must consider all of the factual contentions of the claims.

Finally, NABIC cannot prove that the "Trademark Infringement" exclusion bars coverage because the allegations of disparagement are capable of standing alone and are not necessarily tied to infringement.  Moreover, NABIC seems to imply that this exclusion, if applicable, would only apply to the "Lanham Act" counts.  **Doc. 38, p. 7** ("the claims of trademark infringement (Lanham Act claims) are expressly excluded. . . .").  Because NABIC's duty to defend is triggered by just one potentially-covered claim, even if this exclusion barred coverage for the Lanham Act claims, NABIC still would be obligated to defend based upon the other potentially covered claims.

In light of the foregoing, NABIC's failure to defend Big Bend in the PFS Lawsuit is without just cause or excuse and constitutes a breach of NABIC's policy.  Accordingly, the Court should deny NABIC's cross-motion for summary judgment.

## II.    UNDISPUTED MATERIAL FACTS

The parties agree that there are no disputed issues of material fact and have filed a joint statement of uncontroverted material facts.  **Doc. 35.**

III.    **LEGAL ARGUMENT/COVERAGE ANALYSIS**

    A.    **NABIC Owed Big Bend a Defense in the PFS Counterclaim under the "Personal and Advertising Injury" Section of the Policy Because PFS Alleged Covered "Disparagement"**

        1.    <u>**NABIC's Duty to Defend is Broad**</u>

As long as at least one of the claims in the PFS Counterclaim "*might potentially or arguably* fall within the policy's coverage," NABIC was required to defend Big Bend against the PFS Counterclaim.  *See Colony Ins. Co. v. Corrosion Control, Inc.*, 390 F. Supp. 2d 1337, 1339 (M.D. Ga. 2005) (emphasis added) (internal citation omitted); *see also Nationwide Mut. Fire Ins. Co. v. Somers,* 591 S.E.2d 430, 433 (Ga. App. 2003).  Even if the "allegations . . . are ambiguous or incomplete with respect to the issue of insurance coverage. . . .  [T]he duty to defend exists if the claim potentially comes within the policy."  *Penn-America Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997) (internal citations omitted).  *See also Landmark Am. Ins. Co. v. Khan*, 705 S.E.2d 707, 710 (Ga. Ct. App. 2011).  The key to determining whether the insurer must defend "is not whether the insured is *actually liable* to the plaintiffs; the issue is whether a claim has been asserted which falls within the policy coverage."  *N. Metro Directories Pub., LLC v. Cotton States Mut. Ins. Co.,* 631 S.E.2d 726, 729 (Ga. App. 2006) (emphasis in original) (internal citations omitted).

Additionally, under Georgia law, like the law of most jurisdictions, if coverage is not apparent from the complaint and policy alone, an insurer is required to investigate facts outside the complaint in order to determine whether it is obligated to defend.  *See, e.g., Yeomans,* 618 S.E.2d at 679-80 (internal citations omitted) (where complaint shows no coverage, but insured notifies insurer of additional facts that would place the claim within coverage, insurer must consider those facts and conduct a reasonable investigation).  Even if coverage might have initially appeared to be precluded under the "Knowing Violation" exclusion on the face of the

PFS Counterclaim (which Big Bend denies), Big Bend's Reply to the PFS Counterclaim denied any wrongdoing. *See* **Exhibit E**. In light of this additional factual support, NABIC cannot deny its duty to defend based upon the Knowing Violation exclusion.

The Policy's "Personal and Advertising Injury" section covers claims of injury "*arising out of* . . . oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." **Exhibit A** (emphasis added). PFS alleged that Big Bend engaged in unfair competition under the Lanham Act and tortious interference due, at least in part, to Big Bend's "false and misleading descriptions of fact . . . about its own and PFS' product" and threats to "actual and prospective customers of PFS . . . that if they purchased and used the fertilizer of PFS, they and their customers would be subjected to expensive and time consuming litigation. . . ." **Exhibit C**, pages 46-47, paragraphs 93-94; **Exhibit D**, page 47, paragraphs 85-86. These allegations create the potential for coverage under the Policy.

While, admittedly, the PFS Lawsuit includes some uncovered claims related to patent infringement, the separate allegations that Big Bend made disparaging remarks and misrepresentations about PFS and PFS' products to current and prospective customers nevertheless trigger NABIC's duty to defend. *See* **Exhibits C** and **D**.

> **2.**  **The Policy Specifically Covers Traditionally Intentional Torts, including Libel, Slander, Disparagement of Goods, and Malicious Prosecution**

In NABIC's Cross-Motion, it states that Counts XII and XIII of the PFS Counterclaim "seek recovery for tortious interference with business relationships." **Doc. 38, p. 2**. "As such, [these claims] are necessarily intentional torts for which the NABIC policies are not triggered in the first instance." **Doc. 38, p. 2**. NABIC ignores significant differences between the two main coverage parts of a typical commercial general liability ("CGL") policy, like the one NABIC

issued to Big Bend.  Most CGL policies, like the Policy, have two main coverage parts, Coverage A and Coverage B.  Coverage A (which covers bodily injury and property damage), only applies if the damage arises out of an "occurrence," which is typically defined as an "accident."  Big Bend has never contended that Coverage A should apply to the claims asserted against it in the PFS Counterclaim.  Coverage B, on the other hand, which covers "personal and advertising injury," does not require an "accident" or "occurrence," and instead applies to injury that arises out of one or more of the listed "offenses."  The "offenses" listed under Coverage B of the Policy include several traditionally intentional torts, like false arrest, malicious prosecution, slander, libel, and disparagement.  Accordingly, it is improper to contend that PFS' allegations of unfair competition, disparagement, and tortious interference are not covered by the Policy simply because they are "intentional torts."

NABIC relies on *Hain v. Allstate Ins. Co.*, 471 S.E.2d 521 (Ga. Ct. App. 1996) as support for its proposition that the Policy does not cover intentional torts, but *Hain* has no bearing on this matter.  Unlike the NABIC Policy, the policies in *Hain* (and the cases cited therein) were homeowner's policies that *only* provided coverage for bodily injury arising from an *accident* (similar to Coverage A of the Policy).  *Id.* at 522.  Here, however, because the Policy does not require an "accident" and specifically provides coverage for intentional torts under Coverage B, NABIC's argument is without merit.

### 3. Although There is No Count Titled "Disparagement," That is Irrelevant to the Coverage Determination; the PFS Counterclaim Includes Allegations Sufficient to Establish Covered Disparagement

NABIC is overly and improperly concerned with labels and titles of counts, instead of considering the substance of the claims in the PFS Counterclaim, as it should.  In denying its duty to defend, NABIC has focused, in part, on the fact that PFS pleaded causes of action called "tortious interference" and "Lanham Act violations," rather than "libel, slander or

disparagement" (or some other offense specifically listed in the Policy's definition of "personal and advertising injury").

The titles of the claims asserted against Big Bend are irrelevant under the Policy and well-established insurance law.  First, the Policy does not require that a claim be directly asserted against Big Bend for "disparagement," rather it provides coverage for injury "*arising out of*" libel, slander or disparagement.  Second, it is widely held (including in Georgia) that the title or label given a particular count is not critical to the coverage analysis; the insurer must examine the factual allegations contained in the complaint or counterclaim as a whole to determine whether there is potential coverage.  *See, e.g., Colony*, 390 F. Supp. 2d at 1339 (M.D. Ga. 2005) (factual allegations in the complaint that "might potentially or arguably fall within the policy's coverage," trigger the duty to defend) (citation omitted); *Lime Tree Village Community Club Ass'n, Inc. v. State Farm Gen'l Ins. Co.,* 980 F.2d 1402 (11th Cir. 1993) (factual allegations, rather than the labels attached, trigger the duty to defend); *Heart Mountain Irrigation Dist. v. Argonaut Ins. Co.,* 295 Fed. App'x 298, 301 (10th Cir. 2008) (The "analysis must focus on the *facts* alleged in the complaint . . . not on the *label* . . . applied to a particular cause of action.") (emphasis in original, citation omitted); *Hudson Ins. Co. v. Colony Ins. Co*., 624 F.3d 1264, 1267 (9th Cir. 2010) (insurer's duty is not measured by the technical legal cause of action pleaded in the complaint, but rather by the *potential* for liability under the policy as revealed by the *facts* alleged in the complaint or otherwise known to the insurer) (citations omitted); *Curtis-Universal, Inc. v. Sheboygan Emergency Med. Serv., Inc.,* 43 F.3d 1119, 1122 (7th Cir. 1994) ("What is important is not the legal label that the plaintiff attaches to the defendant's conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers."); *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*,

928 So. 2d 1006, 1012 (Ala. 2005); *State Dep't of Transp. & Pub. Facilities v. State Farm Fire & Cas. Co.*, 939 P.2d 788, 792 (Alaska 1997); *Thompson v. Maryland Cas. Co.,* 84 P.3d 496, 505 (Colo. 2004) ("In analyzing the insurers' duty to defend, we review whether factual elements of a claim covered by the policy are alleged, even if the claim asserted is not labeled as that term is used in the policy."); *Allstate Ins. Co. v. Dridi*, 2003 WL 23177502 (Conn. Super. Ct. Nov. 19, 2003) ("The court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged, give a liberal interpretation to the allegations in the petition and resolve doubts in favor of coverage.); *Ryland Group, Inc. v. Travelers Indem. Co. of IL*, 2000 WL 33544086 (W.D. Texas 2000) ("In reviewing the pleadings in the underlying lawsuit, the court must focus on the factual allegations that show the origin of the damage rather than on the legal theories alleged.") (citations omitted); *see generally*, *Allegations Determine Insurer's Duty to Defend*, 50 A.L.R.2d 458 (Originally published in 1956).

To hold otherwise would lead to absurd and inconsistent results depending upon the varied drafting skills of claimants' attorneys.  NABIC cannot ignore allegations that trigger coverage simply because they do not share the exact title as terms utilized in the Policy.  This approach is far too narrow under Georgia's broad duty to defend.

In *Hartford Fire Ins. Co. v. Vita Craft Corp.,* a case very similar to the present dispute involving primarily uncovered infringement counts and one count of unfair competition, the underlying claimant, like PFS, did not explicitly plead slander, libel or disparagement.  911 F. Supp. 2d 1164 (D. Kan. 2012).  However, in a paragraph which was incorporated by reference into the unfair competition count, the claimant in *Vita Craft* accused the insured of "spreading false rumors."  *Id.* at 1170. The court in *Vita Craft* awarded summary judgment in favor of the insured holding that "the label which the pleader places on the conduct alleged does not

determine the issue of coverage or the duty to defend." *Id.* at 1177, citing *United Wats, Inc. v. Cincinnati Ins. Co.,* 971 F. Supp. 1375, 1384 (D. Kan.1997) (insurer obligated to defend claims of tortious interference even though complaint did not specifically allege such claims); *see also McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.,* 989 S.W.2d 168, 171 (Mo.1999) (policy which covers "offense" of oral publication that disparages person's services not limited to claims for "cause of action" for disparagement); *cf. BASF AG v. Great Am. Assur. Co.,* 522 F.3d 813, 819–20 (7th Cir.2008) (although under Illinois law, insured covered against particular conduct regardless of label placed on conduct by pleader; complaint failed to sketch claim for offense of slander, libel or disparagement).

The court in *Vita Craft* rejected the insurer's argument that only "discrete, free-standing claims for libel, slander or disparagement" were covered under its policy language.  That argument overlooked the fact that the policy in *Vita Craft* (similar to the Policy), "define[d] 'personal and advertising injury' to include injury *arising out of* 'oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or service.'" *Id.* at 1178 (emphasis in original).  The court noted that this exact policy language (virtually the same language at issue here) was found "broad enough to include a tortious interference claim." *Id.*, citing *Freightquote.com, Inc. v. Hartford Cas. Ins. Co.,* 397 F.3d 888, 896 (10th Cir. 2005).

The titles of the counts are irrelevant for determining NABIC's duty to defend.  It is apparent from a reading of the PFS Counterclaim as a whole that PFS has alleged injury *arising out of* disparagement, which constitutes covered "personal and advertising injury" under the Policy.  As a result, NABIC is obligated to defend the PFS Counterclaim.

**4.     No Allegations that Potentially Trigger Coverage are "Superfluous,"
Even if they are Incorporated by Reference into Each Count from the
Introductory Paragraphs of the PFS Counterclaim**

NABIC, in the past, has not attempted to refute the argument set forth in Big Bend's
Memorandum in Support of its Motion establishing that the PFS Counterclaim contains
allegations that constitute "defamation" under Florida law.  *See* **Doc. 14, pp. 11-13** and **Doc. 15**.
As NABIC likely recognizes the futility of such an argument, NABIC instead claims that certain
pertinent allegations are "superfluous," or that PFS "does not seek relief" for those allegations
because they are "merely incorporated" into the tortious interference and unfair competition
counts.  **Doc. 38, pp. 2-3**.  NABIC's position directly contradicts one of the basic tenets of
insurance coverage law–that the insurer must defend if there is even one *potentially* covered
claim.  *See, e.g., Colony*, *supra*, 390 F. Supp. 2d at 1339.  NABIC cannot ignore allegations that
potentially trigger coverage, even if they are incorporated by reference rather than separately
repeated in every count.  *See, e.g., Vita Craft*, 911 F. Supp. 2d at 1170 (relevant allegations were
incorporated by reference into an unfair competition count, triggering coverage).

**B.     NABIC Cannot Meet its Burden to Prove that Any Exclusion Applies to Bar
Coverage**

It is NABIC's burden to prove that an exclusion applies to preclude coverage and absolve
it of its broad duty to defend.  *See, e.g., Kay-Lex Co. v. Essex Ins. Co.*, 649 S.E.2d 602 (Ga. Ct.
App. 2007).  To the extent there is any ambiguity in an exclusionary or limiting provision of the
Policy, that ambiguity must be resolved in favor of coverage.  *Boardman Petroleum, Inc. v.
Federated Mut. Ins. Co.*, 498 S.E.2d 492 (Ga. 1998).  In other words, if the policy language is
capable of more than one meaning, it must be construed in favor of the insured.  *Id.*; *see also N.
Metro Directories Pub., LLC v. Cotton States Mut. Ins. Co.,* 631 S.E.2d 726 (Ga. App. 2006).

Here, NABIC has failed to present evidence proving the applicability of any exclusion in this matter, and has disregarded legal and factual evidence provided by Big Bend demonstrating that coverage exists.

      1.        **The "Knowing Violation" Exclusion is Inapplicable**

          a.      **The "Knowing Violation" Exclusion Only Precludes Knowing/Intentional Injury, it Does Not Preclude Unintended Injury Resulting from Intentional Acts**

NABIC seeks to convert the exclusion for "Knowing Violation of Rights of Another" under Coverage B into an "intentional acts" exclusion. **Doc. 38, pp. 1-2**. That is misleading because the Policy specifically covers intentional conduct (like malicious prosecution and disparagement) and does not necessarily exclude "intentional acts." The "Knowing Violation" exclusion purports to exclude "personal and advertising injury" "caused by or at the direction of the insured with knowledge that the act would violate the rights of another *and* would inflict 'personal and advertising injury.'" **Exhibit A** (emphasis added). This exclusion is much narrower than NABIC posits. It does not preclude coverage for mere intentional *acts*, but requires the insurer prove that the insured had *actual knowledge that its conduct* would violate the claimant's rights and *would inflict personal and advertising injury.*[2]

Georgia, like many jurisdictions, when construing similar "intended/expected" or "knowing violation" exclusions recognizes a distinction between an intentional injury and an unintended injury resulting from an intentional act. *See, e.g., West Am. Ins. Co. v. Merritt,* 456 S.E.2d 225, 226 (Ga. App. 1995) ("if the insured acts in an intentional manner, but does not intend or expect for his action to result in injury to another, then the exclusion does not apply.

---

[2] The "Knowing Violation" exclusion of Coverage B is analogous to the "expected or intended *injury*" exclusion often found under Coverage A. *See* § 6.1 Knowing Violation of Right of Another, Oh. Ins. Coverage (Aug. 2014), citing *Westfield Cos. v. O.K.L. CanLine,* 804 N.E.2d 45 (Ohio. App. 2003) (finding exclusion inapplicable because claimant could have prevailed on Lanham Act claim without proving intentional or knowing infringement. Proof of intent only required to justify request for enhanced damages and attorneys' fees.).

'Thus, there is a recognized distinction between intentional and unintentional results of intentional acts.'"); *see also Harleysville Worcester Ins. Co. v. Paramount Concrete*, 10 F. Supp. 3d 252, 264 (D. Conn 2014) ("It is not enough that the injury-producing act was intentional; the injury itself must have been intended by the insured."), citing *Rogers v. Doody*, 119 Conn. 532, 535, 178 A. 51 (1935) and *Mingachos v. CBS, Inc.,* 491 A.2d 368 (1985); *Am. Family Mut. Ins. Co. v. Pacchetti,* 808 S.W.2d 369, 371 (Mo. banc 1991) (insurers seeking relief under an "expected or intended injury" exclusion, must show "not only that the insured intended the acts causing the injury, but that injury was intended or expected from these acts.").

NABIC cites to various, inapposite cases from other jurisdictions to support its assertion that the "Knowing Violation" exclusion allows an insurer to deny its defense obligation when "intentional acts" have been alleged. **Doc. 38, pp.1-2**. None of the cases cited by NABIC actually support its position. In *Looney Ricks Kiss Architects, Inc. v. Bryan,* although the court states that the "'knowing violation of rights exclusion' has been classified as an intentional conduct exclusion," it states in the very next sentence that this means "[t]he insured must have the requisite knowledge that the intended act *will cause harm and will violate the rights of another.*" 2014 WL 931781 at *6 (W.D. La., Mar. 10, 2014) (emphasis added). Additionally, "courts have refused to apply the exclusion where the insured could be liable even if the infringement was inadvertent, negligent, or reckless." *Id.* Here, in addition to intentional conduct, PFS has alleged mere wrongful and reckless conduct, so the exclusion cannot apply.

All of the cases cited by NABIC for this proposition[3] are distinguishable from the present matter. NABIC cites duty to defend cases from Louisiana, Kentucky and Florida, however, these jurisdictions, *unlike Georgia*, allow an insurer to determine its duty to defend *solely* based upon

---

[3] *Looney Ricks,* supra; *Educational Training Systems, Inc. v. Monroe Guar. Ins. Co.,* 129 S.W.3d 850, 852 (Ky. Ct. App. 2003); *Signal Products, Inc. v. Am. Zurich Ins. Co.,* 2013 WL 6814847 (C.D. Cal., Dec. 19, 2013); and *CareMedic Systems, Inc. v. Hartford Cas. Ins. Co.,* 2008 WL 912437 (M.D. Fla., Apr. 1, 2008).

the eight corners of the complaint and policy. *See, e.g., Martco Ltd. Partnership v. Wellons, Inc.* 588 F.3d 864 (5th Cir. 2009) (Louisiana applies eight-corners rule to determine defense obligation); *Liberty Corp. Capital Ltd. v. Security Safe Outlet, Inc.,* 937 F. Supp. 2d 891 (E.D. Ky. 2013) (under Kentucky law, duty to defend is determined by comparing the allegation in the complaint with the insurance policy); *Orlando Nightclub Enterprises, Inc. v. James River Ins. Co.,* 2007 WL 4247875 (M.D. Fla., Nov. 30, 2007) (under Florida law an insurer's duty to defend is determined by examining the allegations in the complaint). Georgia, however, requires the insurer take into account information presented to it by the insured when coverage is not otherwise apparent—like Big Bend's contention that it did not commit any intentional wrongdoing or intend to cause any damage to PFS.

There is one case cited by NABIC from a jurisdiction like Georgia that requires insurers consider extrinsic evidence when analyzing the duty to defend. However, that case only applied the "knowing violation" exclusion to preclude *indemnity* after the insured was found at trial to have committed intentional trade dress infringement. *Signal Products, Inc. v. Am. Zurich Ins. Co.,* 2013 WL 6814847 (C.D. Cal. 2003). Notably, the insurers in that case agreed they owed defense, which is what Big Bend seeks here. *See id.*

Notably, in *Lincoln Nat. Health and Cas. Ins. Co. v. Brown,* the U.S. District Court for the Middle District of Georgia found an insurer's attempt to deny coverage based upon a similar coverage position as that taken by NABIC here was "complete nonsense." 782 F. Supp. 110, 113 (M.D. Ga. 1992). In *Lincoln,* the policy covered specific "personal injuries" including traditionally intentional torts, like false arrest, malicious prosecution and discrimination. *Id.* at 112. The policy also contained a coverage limiting provision, not unlike the "Knowing Violation" exclusion in the Policy, which purported to limit coverage to only "personal injury the

insured did not expect or intend unless the personal injury resulted from the use of reasonable force to protect persons or property." *Id.* Like NABIC, the insurer in *Lincoln* argued that because the policyholder was accused of *acting* intentionally, there was no coverage. *Id.* The court disagreed, holding that there was an inconsistency in the policy that had to be construed in favor of the policyholder. *Id.* at 113, citing *U.S. Fire Ins. Co. v. Hilde*, 322 S.E.2d 285, 288 (Ga. App. 1984); *Welch v. Gulf Ins. Co.,* 190 S.E.2d 101 (Ga. App. 1972) (when policy provisions are contradictory, the provision most favorable to the insured will be applied). To define "personal injury" to include intentional torts, but also include a provision that the insurer claims means that the policy only applies to "unintentional false arrest, unintentional malicious prosecution, and unintentional assault and battery . . . is complete nonsense." *Id.* at 112-13. Although the language of the coverage limiting provision in *Lincoln* differs from the language of the "Knowing Violation" exclusion in the Policy, the concept is the same. To the extent NABIC seeks to apply the "Knowing Violation" exclusion to bar coverage because Big Bend is accused of intentional *acts*, while at the same time specifically providing coverage for intentional torts under Coverage B, this creates a contradiction and cannot be enforced.

> **b.      The PFS Counterclaim Does Not Allege Big Bend Specifically Knew it Would Cause PFS Personal and Advertising Injury, and Even If It Did, NABIC Could Not Refuse to Defend Because it Also Alleges Less Culpable Conduct and Big Bend Denies Any Wrongdoing**

NABIC states, "[i]f the plaintiff chooses to plead that the defendant acted intentionally, a mere denial of intent or the possibility that the plaintiff may not ultimately succeed in proving intent does not change the fact that the plaintiff chose to plead intent." **Doc. 38, p. 5.** This position misconstrues the PFS Counterclaim, the "Knowing Violation" exclusion, and applicable law. Even if it were true that Big Bend intentionally or knowingly made false statements, which Big Bend denies, that does not prove that Big Bend actually knew such statements would violate

PFS' rights and cause PFS injury, as required for the "Knowing Violation" exclusion to apply. NABIC has presented no evidence that Big Bend had actual knowledge of the falsity of its alleged disparaging remarks to PFS' customers or prospective customers, or that Big Bend intended to cause PFS personal and advertising injury. *See, State Farm Fire & Cas. Co. v. King Sports, Inc.,* 827 F. Supp. 2d 1364 (N.D. Ga. 2011) (willful infliction exclusion would not bar coverage where insurer could not prove insured "knew that its actions of selling infringing products would result in a violation of claimant's trademark rights," despite insured's employee's testimony that the insured knew it was selling infringing products.).

Even if a claimant's accusations in a complaint or counterclaim alone could provide a sufficient basis for NABIC to deny its duty to defend, which Big Bend disputes (*see Penn-America, supra,* 490 S.E.2d at 376 (requiring that the insurer consider facts brought to its attention by the insured when coverage is not apparent from the complaint alone)), the PFS Counterclaim does not state that Big Bend had knowledge of the falsity of the alleged disparaging remarks, or that Big Bend intended to cause PFS harm. Although some of the allegations in the PFS Counterclaim allege knowing and intentional conduct, none of the allegations bring PFS' claims against Big Bend within the "Knowing Violation" exclusion. At paragraph 35, for example, the PFS Counterclaim states that "[Big Bend's] representative in Florida contacted PFS' customers and told them that [Big Bend] was in litigation with PFS and they should not purchase the PFS product. There was no litigation at the time. . . ." **Doc. 35, ¶¶ 11-12; Exhibit D.** PFS does not allege that Big Bend *knew* it was making false and disparaging statements, only that Big Bend made the statements, and that the statements were false. Similarly, paragraph 91 of the PFS Counterclaim states that Big Bend's actions were committed "knowingly to cause actual and prospective customers of PFS to refrain from

purchasing fertilizer products from PFS thus damaging PFS." **Doc. 35, ¶ 17; Exhibit D.**
Accusing Big Bend of knowingly taking action that ultimately resulted in damage is not the same
as accusing Big Bend of intentionally or knowingly causing PFS personal and advertising injury,
as required by the "Knowing Violation" exclusion.

Additionally, even if some of the "intentional" and "knowing" allegations in the PFS
Counterclaim arguably fall within the "Knowing Violation" exclusion, PFS has not alleged that
Big Bend *solely* acted knowingly or intentionally.  Even if some of the allegations were arguably
excluded because PFS accused Big Bend of knowingly or intentionally causing personal and
advertising injury, which Big Bend denies, NABIC still must defend because PFS *also* asserts
conduct akin to recklessness or even negligence. Throughout the relevant counts for tortious
interference and unfair competition, PFS claims that Big Bend's conduct was "wrongful,"[4]
"without any privilege or justification," "without good cause," "misleading," "unfair," "without
the consent, authorization or approval of PFS," and "with wanton disregard for PFS' rights."[5]
*See, e.g.,* **Exhibit D** at paragraphs 84-88, 105, 110, 111, 113, 114, 119, 128. This is not
surprising, since the claims PFS has asserted for unfair competition under the Lanham Act,
tortious interference, and disparagement do not require intent to harm the claimant as a
prerequisite for recovery.  *See, e.g., Vector Products, Inc. v. Hartford Fire Ins. Co.,* 397 F.3d
1316, 1319 (11th Cir. 2005) (applying FL law) (no proof of intent or willfulness required to
establish a violation of the Lanham Act); *Delacruz v. Peninsula State Bank,* 221 So. 2d 772, 775
(Fla. 2nd DCA 1969) (defamation is a false and unprivileged publication of unfounded
statements that cause injury to a third party (no proof of intent is required)); *see also Tamiami*

---

[4] *See, e.g., Gooding v. Univ. Hosp. Bldg., Inc.,* 445 So. 2d 1015 (Fl. 1997) (tort of *wrongful* death, for example, requires only proof of "negligence").

[5] *See, e.g., State v. May,* 670 So. 2d 1002 (Fla. 2d DCA 1996) (driving "recklessly" means driving with a willful or *wanton disregard* for safety).

*Trail Tours, Inc. v. J.C. Cotton,* 463 So. 2d 1126, 1127-28 (Fla. 1985) (although element of tortious interference is "intent," it does not require *intent to harm* the claimant; the defendant's motive (*e.g.*, business advantage/greed or malice) is irrelevant).  Because PFS has accused Big Bend of both intentional and less culpable conduct, NABIC must defend.  *See, e.g., Decisionone Corp. v. ITT Hartford Ins. Group,* 942 F. Supp. 1038, 1043 (E.D. Penn. 1996) (holding similar exclusion inapplicable where complaint alleged acts done intentionally, willfully, as well as recklessly); *see also Irons Home Builders, Inc. v. Auto-Owners Ins. Co.,* 839 F. Supp. 1260, 1265 (E.D. Mich. 1993) (insurer required to defend despite allegations that infringement was willful where "a fair reading of the complaint would have taken possibility of incidental infringement into account.").

Finally, even assuming that *all* of the allegations of the PFS Counterclaim asserted knowing or intentional harm by Big Bend, NABIC still would be required to defend this matter because Big Bend denies it has committed any intentional wrongdoing.  **Doc. 35, ¶ 21;** s*ee also* **Exhibit E.**  In Georgia, as in most jurisdictions, if coverage is not apparent from the complaint or counterclaim alone, an insurer is required to investigate facts outside the complaint in order to determine whether it is obligated to defend.  *See, e.g., Yeomans & Assocs. Agency, Inc. v. Bowen Tree Surgeons, Inc.,* 618 S.E.2d 673, 679-80 (Ga. App. 2005) (internal citations omitted) (where complaint shows no coverage, but insured notifies insurer of additional facts that would place the claim within coverage, insurer must consider those facts and conduct a reasonable investigation).  This is true, in part, because Georgia, again like most jurisdictions, requires insurers to defend policyholders against even false, fraudulent and groundless claims.  *See Southern Guar. Ins. Co. v. Dowse,* 605 S.E.2d 27, 29 (Ga. 2004) (citing *Consequences of Liability Insurer's Refusal to*

- 17 -

*Assume Defense of Action Against Insured Upon Ground That Claim Upon Which Action is Based is Not Within Coverage of Policy*, 49 A.L.R.2d 694).

Here, Big Bend provided its Reply to the PFS Counterclaim (denying wrongdoing) to NABIC immediately after NABIC denied coverage.  Accordingly, to the extent coverage otherwise might have been precluded by the "Knowing Violation" exclusion, facts presented by Big Bend showing that there was no actual intent to harm would bring the claims back within coverage.

Because the PFS Counterclaim does not accuse Big Bend of knowingly causing PFS personal and advertising injury, it includes terms that appear to accuse Big Bend of less culpable conduct (*i.e.*, conduct akin to negligence or recklessness), and because Big Bend denies any knowing or intentional wrongdoing in the PFS Lawsuit, NABIC cannot meet its burden to show that the "Knowing Violation" exclusion applies.

**2.**      **The "Infringement of Copyright, Patent, Trademark or Trade Secret" Exclusion Is Inapplicable**

In addition to the "Knowing Violation" exclusion, NABIC relies upon the so-called "Trademark Infringement" exclusion to deny the possibility of coverage for the PFS Counterclaim.  That exclusion applies to "'personal and advertising injury' arising out of the [actual] infringement of copyright, patent, trademark, trade secret or other intellectual property rights. . . ." **Exhibit A.**

First, NABIC seems to imply that this exclusion can only potentially apply to infringement-related claims, like certain Lanham Act claims, and therefore, it is inapplicable to other non-infringement claims (like claims for tortious interference or disparagement, for example).  *See* **Doc. 38, p. 7, ¶ 1.**  Assuming this is true, even if the exclusion applied to the two Lanham Act counts in the PFS Counterclaim, which Big Bend denies, the exclusion would not

preclude the possibility of coverage for the tortious interference and disparagement claims and thus, has no bearing on NABIC's duty to defend.

Second, NABIC concludes that the exclusion applies to "claims of trademark infringement (Lanham Act claims)" without citing any legal authority or analyzing the facts of the PFS Counterclaim. **Doc. 38, p. 7.** The remainder of NABIC's argument is spent attempting to rebut that the exception to the exclusion for "use of another's advertising idea in your 'advertisement'" applies here. **Doc. 38, pp. 7-8.** Once again, NABIC has failed to meet its burden of proof with regard to this exclusion. There is no need to discuss the "advertising" exception to this exclusion because NABIC cannot make it past the initial step of proving the exclusion applies in the first place.

Even if this exclusion could arguably apply to more than just the Lanham Act claims, not *all* of the potentially covered allegations necessarily arise out of the actual "infringement of . . . patent," to bring them within the Trademark Exclusion. PFS alleged that Big Bend made certain misrepresentations and threats to PFS customers, thereby committing unfair competition and tortious interference—these allegations stand on their own and are not linked to the separate accusations that Big Bend's patents are invalid. *See* **Exhibit C.**

This is analogous to the *Vita Craft* case, discussed above, in which the insurer attempted to apply a similar intellectual property exclusion to bar coverage. 911 F. Supp. 2d at 1180. In *Vita Craft* the court refused to apply the exclusion because the single allegation that supported coverage under the "defamation" prong of the personal and advertising injury coverage in the policy (an allegation that the insured had spread false rumors about the claimant), was not necessarily tied to intellectual property rights. *Id.*

In light of the foregoing, NABIC cannot meet its burden to prove that the "Trademark Infringement" exclusion applies to bar coverage and it must defend Big Bend from the date of the filing of the original PFS Counterclaim.

## IV.     CONCLUSION

For the foregoing reasons, Big Bend respectfully requests that the Court deny NABIC's Cross-Motion for Summary Judgment; and that the Court grant Big Bend any and all other relief the Court deems just and necessary.

Date:  March 2, 2015          Respectfully submitted,

                              LATHROP & GAGE LLP


                              By:  /s/ Kimberly K. Winter
                                   Justin Poplin GA Bar No. 142033
                                   jpoplin@lathropgage.com
                                   Michael J. Abrams (admitted *pro hac vice*)
                                   mabrams@lathropgage.com
                                   Kimberly K. Winter (admitted *pro hac vice*)
                                   kwinter@lathropgage.com
                                   2345 Grand Boulevard, Suite 2200
                                   Kansas City, Missouri 64108-2618
                                   Telephone:  (816) 292-2000
                                   Telecopier:  (816) 292-2001

                                   ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that, on this 2nd day of March, 2015, the foregoing was electronically filed and served by the ECF Court filing system on the below named counsel:

Julius F. "Rick" Parker III
William L. Wallis
Butler Pappas Weihmuller Katz Craig, LLP
3600 Maclay Blvd., Suite 101
Tallahassee, FL 32312
jparker@butlerpappas.com
wwallis@butlerpappas.com

ATTORNEYS FOR DEFENDANT


/s/ Kimberly K. Winter
An Attorney for Plaintiff