**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| FOLIAR NUTRIENTS, INC., | : | |
| BIG BEND AGRI-SERVICES, INC., | : | |
| and MONTY FERRELL, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CASE NO.: 1:14-CV-75 (WLS) |
| v. | : | |
| | : | |
| NATIONWIDE AGRIBUSINESS | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

## ORDER

    Pending before the Court are the Plaintiffs' Motion for Partial Summary Judgment (Doc. 34) and the Defendant's Motion for Summary Judgment (Doc. 37).  For the reasons that follow, the Plaintiffs' Motion for Partial Summary Judgment (Doc. 34) is **GRANTED**, and the Defendant's Motion for Summary Judgment (Doc. 37) is **DENIED.**

## PROCEDURAL BACKGROUND

    The complaint in the above-captioned matter was filed on May 13, 2014.  (Doc. 1.) The Plaintiffs amended their complaint by Court order.  (*See* Doc. 31.)  On January 9, 2015, the Court denied as moot the Parties' cross-motions for summary judgment and set deadlines for revised summary judgment briefing in light of the amended complaint.  (*See* Doc. 33.)  The amended complaint added a count of bad faith.  (Doc. 35 at ¶ 27.)  The Court permitted the Parties to file one joint statement of material facts.  (Doc. 33.)  The Parties complied with the Court's order by timely filing cross-motions for summary judgment as well as responses and replies thereto.  (*See* Docs. 34-42.)  As such, the Court finds that the cross-motions for summary judgment are ripe for review.

## FACTUAL BACKGROUND

### I.    Introduction

The following facts are derived from the Amended Complaint (Doc. 17), Nation-wide's Answer (Doc. 32), the Parties' Joint Statement of Uncontroverted Material Facts (Doc. 35), all of which were submitted in compliance with M.D. Ga. L.R. 56, and the record in this case.   Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits submitted, all of which are construed in a light most favorable to the nonmoving party.   *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### II.    Relevant Facts

Plaintiffs Foliar Nutrients, Inc. ("Foliar") and Big Bend Agri-Services, Inc. ("Big Bend") are Georgia corporations with their principal places of business in Georgia.   (Doc. 35 at ¶¶ 1-2.)   Plaintiff Monty Ferrell, who is an executive officer of Foliar, is an individual citizen and permanent resident of Georgia.   (*Id.* at ¶ 3.)   Nationwide Agribusiness Insurance Company ("Nationwide") is an insurance company authorized to conduct business in Georgia.   (*Id.* at ¶ 4.)   On May 10, 2013, Big Bend filed a complaint against a competitor, Plant Food Systems, Inc. ("PFS"), in the United States District Court for the Middle District of Florida, alleging primarily infringement of patents related to fertilizer products.   (*Id.* at ¶ 7.)   PFS filed an answer and counterclaim on August 13, 2013.   (*Id.*)   On August 23, 2013, Big Bend notified Nationwide of the counterclaim filed by PFS and demanded a defense of that counterclaim.   (*Id.* at ¶ 8.)   Thereafter, PFS amended its counterclaim to drop one count of breach of contract.[1]   (*Id.* at ¶¶ 9-10.)

The remaining claims against Big Bend alleged Lanham Act violations, tortious interference, unfair competition, and other related claims.   (*See id.* at ¶ 11.)   PFS alleged that, "[i]n early 2013, Foliar's representatives in Florida contacted PFS' customers and told them that Foliar was in litigation with PFS and they should not purchase the PFS product."   (*Id.* at ¶ 12.)   PFS alleged that, at that time, Foliar and PFS were not in litigation.   (*Id.*)   PFS also al-

---

[1] The Court will refer to the amended counterclaim and the counts remaining therein as "the counterclaim."

leged that "Foliar has wrongfully coerced and threatened the actual and prospective customers of PFS . . . that if they purchased and used the fertilizer products of PFS, they and their customers would be subjected to expensive and time consuming litigation."  (*Id.* at ¶ 13.)  The counterclaim stated that Big Bend's actions "constitute false and misleading descriptions of fact and representations of fact about its own and PFS' product."  (*Id.* at ¶ 14.)  PFS asserted that the "misrepresentations have actually deceived or have had the tendency to deceive a substantial segment of Foliar's intended audience and were placed in interstate commerce by Foliar."  (*Id.*)  PFS alleged that it "sustained damages as a direct and proximate cause of Foliar's tortious acts and unfair competition," and "has been damaged and is likely to be further damaged as a result of these misrepresentations by the direct diversion of sales or by the lessening of the goodwill associated with its products."  (*Id.* at ¶¶ 14-15.)

Counts I through VIII of the counterclaim sought declaratory judgments regarding certain patents held by Foliar, and sought to invalidate those patents.[2]  (*Id.* at ¶ 16.)  Counts IX and X of the counterclaim alleged that Foliar and Ferrell, respectively, "intentionally, wrongfully and without any privilege and justification and in bad faith" interfered with PFS' business relationships, engaged in unfair competition and deceptive trade practices, and made false and misleading representations about PFS' products in violation of the Lanham Act, 15 U.S.C. § 1125(a).  (*Id.* at ¶¶ 17-18.)  Count XI and XII alleged that Foliar and Ferrell, respectively, tortiously interfered with PFS' business relationships "intentionally, willfully and with wanton disregard for PFS's rights."  (*Id.* at ¶¶ 19-20.)

For the policy period of July 1, 2012 through July 1, 2013, Big Bend purchased an insurance policy from Nationwide with liability limits of $1,000,000 per occurrence and $2,000,000 aggregate for bodily injury and property damage liability ("Coverage A"), and $1,000,000 per person or organization and $2,000,000 aggregate for personal and advertising injury liability ("Coverage B").  (*Id.* at ¶ 22.)  Coverage B provides as follows:

---

[2] Counts I through VIII of the counterclaim are not at issue in this case.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

   This insurance does not apply to:

   a. **Knowing Violation Of Rights Of Another**

   "Personal and advertising injury" caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   . . .

    **i.**    **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

## SECTION II - WHO IS INSURED

1. If you are designated in the Declarations as:

. . .

    d.    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    . . .

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION V – DEFINITIONS

. . .

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    . . .

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

> e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f.    The use of another's advertising idea in your "advertisement"; or
>
> g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(*Id.* at ¶ 22.)  Nationwide also issued a Commercial Liability Umbrella Policy to Foliar for the policy period of July 1, 2012 through July 1, 2013, with liability limits of $5,000,000 over scheduled underlying coverage of the Nationwide policy described above.  (*Id.* at ¶ 23.)  The Umbrella Policy provides as follows:

### COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1.  Insuring Agreement**

> a.  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But
>
> > (1)  The amount we will pay for "ultimate net loss" is limited as described in Section III – Limits Of Insurance; and
> >
> > (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.
> >
> >     No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
>
> b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

6

**2. Exclusions**

This insurance does not apply to:

a.   "Personal and advertising injury"

    (1)  Knowing Violation Of Rights Of Another

        Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

    . . .

    (9)  Infringement of Copyright, Patent, Trademark Or Trade Secret

        Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.  Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

        However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

    . . .

## SECTION II – WHO IS INSURED

1.   Except for liability arising out of the ownership, maintenance or use of "covered autos":

a.   If you are designated in the Declarations as:

. . .

    (4)   An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

    . . .

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION V – DEFINITIONS**

. . .

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    . . .

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.    The use of another's advertising idea in your "advertisement"; or

    g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(*Id.* at ¶ 24.)  In a letter dated December 5, 2013, Nationwide denied that it had a duty to defend Big Bend under the policies referenced above.  (*Id.* at ¶ 25.)  Therein, Nationwide asserted that the "[c]ounterclaim does not trigger coverage under either of the [Nationwide] policies" and "the only offenses coming within the definition of 'personal and advertising injury' are infringement of trade dress or slogan in the insured's advertisement which is not at issue here."  (*Id.*)  After Big Bend made several unsuccessful attempts to persuade Nationwide to accept its coverage obligations in the PFS lawsuit, Big Bend filed a complaint in this Court on May 13, 2014.  (*Id.* at ¶ 26.)

## STANDARDS OF REVIEW

### I.  Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment where no genuine issue of material fact remains and the party is entitled to judgment as a matter of law.  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013).  "A genuine issue

of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Chapman*, 229 F.3d at 1023. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to competent record evidence that would be admissible at trial. *See also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S.

at 322-23; *Allen*, 121 F.3d at 646.  However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c).

## II. Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56.  As stated above, the Parties complied with the Federal Rules of Civil Procedure, the Local Rules, and the order of this Court by filing timely cross-motions for summary judgment, responses and replies thereto, and a single, joint statement of material facts.  The Court will now address these ripe motions without further delay.

## <u>ANALYSIS</u>

### I.  Plaintiffs' Motion for Partial Summary Judgment

Big Bend requests that this Court declare Nationwide had a duty to defend Big Bend against the counterclaim under the "Personal and Advertising Injury" coverage of Nationwide's policy.  (*See* Doc. 34 at 1.)  Big Bend also seeks an award for its incurred and unreimbursed expenses related to the defense of the underlying PFS lawsuit from the date of filing the counterclaim until its final resolution, along with pre- and post-judgment interest.  (*Id.*) It is Big Bend's contention that, as a matter of law, Nationwide breached its contractual duty to defend Big Bend when it refused to accept Big Bend's defense against the counterclaim, even though the counterclaim "fell within" the policy.  (*Id.* at 1-2.)

"In diversity cases, a federal court applies the law of the forum in which it sits." *Broyles v. Bayless*, 878 F.2d 1400, 1402 (11th Cir. 1989).  "In a diversity of citizenship action involving construction of an insurance contract, Georgia law controls where the contract is made and delivered in Georgia even though the [incident] which gave rise to the claim oc-

curred in another state." *GEICO v. Dickey*, 340 S.E.2d 595, 596 (Ga. 1986). The Parties agree Georgia law applies to the legal question of insurance contract and policy interpretation. (*See* Docs. 36 at 6; 38 at 1.) Thus, the Court will apply Georgia law to this contract interpretation case.

The duty to defend in Georgia is broad in that claims that could "potentially or arguably" fall within the policy's coverage initiate an insurer's obligation to defend their insured under the policy. *Elan Pharm. Research Corp. v. Emp'rs Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998). *See also Penn-America Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997) ("Where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured." (citations omitted)). If, on the face of the complaint, the allegations against the insured do not come within the insurance policy's coverage, then the insurer is justified in refusing to provide a defense. *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998) (citing *Leader Nat'l Ins. Co. v. Smith*, 339 S.E.2d 321, 328 (Ga. Ct. App. 1985)). However, if the insured comes forth with additional facts that could potentially bring the insured within coverage, the insurer must reasonable investigate those facts before resting on their initial refusal. *Colonial Oil Indus. Inc. v. Underwriters Subscribing*, 491 S.E.2d 337, 338-39 (Ga. 1997) (answering certified questions from the Eleventh Circuit.) Thus, "the duty to defend is excused only if the petition unambiguously excludes coverage under the policy." *Colony Ins. Co. v. Corrosion Control, Inc.*, 390 F. Supp. 2d 1337, 1339 (M.D. Ga. 2005); *see also JNJ Found. Specialists, Inc. v. D.R. Horton, Inc.*, 717 S.E.2d 219, 223 (Ga. App. Ct. 2011) (accord).

To determine whether Nationwide has a duty to defend, the Court is compelled to "compare the allegations of the complaint, as well as the facts supporting those allegations, against the provisions of the insurance contract." *Elan*, 144 F.3d at 1375. In the counterclaim, PFS alleged that Foliar's representatives contacted PFS' customers and "told them that Foliar was in litigation with PFS and they should not purchase the PFS product." (Doc. 35 at ¶ 12.) PFS further alleged that Foliar informed PFS' customers that "if they purchased and used the fertilizer products of PFS, they and their customers would be subjected to expensive and time consuming litigation." (*Id.* at ¶ 13.) According to PFS, Foliar and PFS

11

were not engaged in litigation.  (*Id.* at ¶ 12.)  PFS alleged that the extent of their damage was the "direct diversion of sales or by the lessening of the goodwill associated with its products."  (*Id.* at ¶ 14.)  Collectively, PFS accused Foliar and Ferrell of interfering with PFS' business relationships through unfair competition and deceptive trade practices.  (*Id.* at ¶¶ 17-20.)

In comparison with Coverage B the policy, Nationwide agreed to defend Big Bend against suits arising from "personal and advertising injury" damages "to which this insurance applies."  (*Id.* at ¶ 22.)  The insurance applies to personal and advertising injury "caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."  (*Id.*)  However, the insurance does not apply if it falls within one of Nationwide's many exclusions.  (*Id.*)  A "personal and advertising injury" is defined as an injury that arose out of various "offenses," including "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." [3]  (*Id.*)

Upon review, the Court finds that there is no genuine issue of material fact as to whether Nationwide breached its duty to defend Big Bend against the PFS lawsuit.  PFS raised sufficient allegations against Foliar and Ferrell that could "potentially or arguably" fall within Nationwide's policy, which in turn triggered Nationwide's duty to defend.  First, a "personal and advertising injury" is one that arises out of the insured's business.  PFS' plain allegations of tortious interference with business relations showed that Foliar and Ferrell's conduct arose out of its business.  Second, and perhaps most pertinent to these cross-motions, PFS' allegations arguably fell under the policy's definition of a personal and advertising injury arising from an "offense."

Both under Georgia or Florida law, libel and slander require a false statement that results in injury to another.  *See Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1376 (M.D. Fla. 2002); O.C.G.A. § 51-5-1 ("A libel is a false and malicious defamation … tending to injure the reputation of the person . . . ."; O.C.G.A. § 51-5-4(a)(4) ("Slander or oral defamation consists in . . . [u]ttering any disparaging words productive of special damage

---

[3] Nationwide's Commercial Liability Umbrella Policy also provides a similar reading.  (*See* Doc. 35 at ¶ 24.)

. . . .”).  When Foliar reached out to PFS' customers to both undermine PFS' product and discourage PFS' customers, under threats of expensive and time-consuming litigation, from engaging in future business with PFS, this arguably amounted to oral disparagement of PFS' goods, products, or services.  This is even more apparent because PFS alleged that Foliar's false and misleading statements caused harm to their sales and goodwill.  Because the PFS' counterclaim raised sufficient allegations of a "personal and advertising injury" that potentially or arguably fell within Nationwide's policy coverage, Nationwide had a duty to defend Big Bend in the lawsuit.  Unless Nationwide is able to show that an exclusion applies, as discussed below, Plaintiffs' Partial Motion for Summary Judgment (Doc. 34) should be granted.

## II.  Defendant's Motion for Summary Judgment

Nationwide instead argues that summary judgment should be granted in their favor because the allegations against Big Bend implicate certain exclusions—specifically the "Knowing Violation" and "Trademark Infringement" exclusions.  For the reasons stated below, Nationwide's Motion for Final Summary Judgment (Doc. 37) is **DENIED.**

### A.  Knowing Violation Exclusion

Nationwide reasons that PFS' choice to plead intentional acts of misconduct against Big Bend clearly shows that the "Knowing Violation" exclusion "applies to bar all coverage" under Nationwide's policy.  (Doc. 38 at 2.)  Nationwide contends the exclusion would still apply, even if Foliar and Ferrell's alleged false and disparaging statements about PFS' products fell within Coverage B of the policy as an enumerated "offense."  (*Id.*)  Nationwide likens this case to *Hain v. Allstate Ins. Co.*, 471 S.E.2d 521 (Ga. Ct. App. 1996).  There, Allstate Insurance Company (Allstate) declined to cover their insured when a former employee accused their insured of sexual harassment.  *Id.* at 522.  The former employee brought action against the insured for assault, battery, and intentional infliction of emotional distress. *Id.*  Allstate's policies specifically excluded from coverage non-accidental acts intended to cause bodily injury and mental anguish.  *Id.*  The grant of summary judgment in Allstate's favor was affirmed because the very nature of the former employee's allegations was intentional and could not have resulted in an accident.  *Id.*

However, *Hain* is inapplicable here.  *Hain*, and the cases cited therein, interpreted insurance policies identical to "Bodily Injury and Property Damage Liability" exclusion under Coverage A—not the "Personal and Advertising Injury Liability" exclusion under Coverage B, as Nationwide is claiming here.  The focus in *Hain* was on the insured's intentional acts.  Here, the focus under Coverage B is whether Foliar and Ferrell's intentional acts were done "with knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"  (Doc. 35 at ¶ 22.)

Under Georgia law, "there is a recognized distinction between intentional and unintentional results of intentional acts."  *W. Am. Ins. Co. v. Merritt*, 456 S.E.2d 225, 226 (Ga. Ct. App. 1995) (quoting *Colonial Penn Ins. Co. v. Hart*, 291 S.E.2d 410, 413 (Ga. Ct. App. 1982) (quotations omitted).  In order for the exclusion under Coverage B to apply, there must be an intentional act plus a showing of actual knowledge that the insured's intentional act would cause an intended result.  *See, e.g.*, *State Farm Fire & Cas. Co. v. King Sports, Inc.*, 827 F. Supp. 2d 1364, 1371-72 (N.D. Ga. 2011) (holding that insurer did not offer sufficient proof that insured had knowledge that their conduct infringed on the trademark rights of another).  Thus, if Nationwide wants to rely on the benefit of the "Knowing Violation" exclusion, it must carry its burden of "showing that a fact situation falls within an exclusionary clause" of its policy.  *Connell v. Guar. Tr. Life Ins. Co.*, 541 S.E.2d 403, 406 (Ga. Ct. App. 2000) (citing *Mut. Life Ins. Co. of N.Y. v. Bishop*, 209 S.E.2d 223, 225 (Ga. Ct. App. 1974)).

Nationwide attempts to rest on the allegations within the counterclaim alone to meet its burden.  (*See* Doc. 38 at 3 (" . . . even if those Counts could be interpreted to allege 'personal and advertising injury,' all four Counts expressly state that the Plaintiffs' actions were done, 'intentionally, wrongfully and without any privilege or justification.'").)  Yet, without more, the Court cannot unequivocally say Nationwide is entitled to summary judgment.  Neither PFS' counterclaim nor Nationwide's brief in support of its motion for summary judgment demonstrate whether or not Foliar and Ferrell had actual knowledge that their conduct would both violate the rights of PFS and would inflict personal and advertising injury.  Furthermore, Georgia law requires insurers to reasonably investigate the rights of their insured under the policy when a "complaint on its face shows that there is no coverage, but

14

the insured notifies the insurer . . . of additional facts that would place the claim within the policy coverage." *Yeomans & Assocs. Agency, Inc. v. Bowen Tree Surgeons, Inc.*, 618 S.E.2d 673, 680 (Ga. Ct. App. 2005) (holding that an insurer could not "rely solely upon the language of the complaint in arguing it had no duty to defend" its insured).

Even if Counts IX through XII all alleged Big Bend's actions were done "intentionally, wrongfully and without any privilege or justification," the burden was on Nationwide to show that Foliar and Ferrell acted with actual knowledge that their conduct would impede on the rights of PFS and would cause PFS personal and advertising injury. Nationwide has provided no evidence outside of PFS' pleadings that Foliar and Ferrell acted with actual knowledge. Therefore, Nationwide is not entitled to summary judgment on the basis of the "Knowing Violation" exclusion.

### B. Trademark Infringement Exclusion

In the alternative, Nationwide argues that the "Trademark Infringement" exclusion applies to Counts IX and X (Lanham Act claims) of the counterclaim because the alleged infringement was not related or otherwise connected to advertising. Nationwide relies on *Robert Bowden, Inc. v. Aetna Cas. & Sur. Co.*, 977 F. Supp. 1475 (N.D. Ga. 1997), and other cases outside of this Circuit, to support their contention that advertising injuries must be committed in the course of advertisement in order to trigger the duty to defend. However, the insurance policy in *Robert Bowden* specifically applied to advertising injuries "caused by an offense committed in the course of advertising your goods, products or services." *Id.* at 1477. In defining its enumerated "offenses," which included infringement, the *Robert Bowden* policy required advertising injuries to be "committed in the course of advertising [the insured's] goods or products." *Id.*

The language in Nationwide's policy is not so direct or clear. Nothing in the "Trademark Infringement" exclusion requires personal and advertising injuries to arise from the insured's advertisement activities. (*See* Doc. 35 at ¶ 22.) It only requires that such injuries arise from "infringement of copyright, patent, trademark, trade secret or other intellectual property rights." (*Id.*) "Like any other contract, an insurance policy must be construed according to its plain language and express terms." *Ga. Farm Bureau Mut. Ins. Co. v. Kephart*,

439 S.E.2d 682, 683 (Ga. Ct. App. 1993). Thus, the Court is unconvinced by Nationwide's causal connection to advertisement argument.

In their reply, Nationwide secondarily attempts to avoid coverage liability by pointing to PFS' "precise cause of action on which they seek to relief," (*i.e.*, the Lanham Act) rather than to the precise factual allegations of the counterclaim. (*See* Doc. 41 at 4.) The Court assumes that Nationwide's argument is that by virtue of PFS' claim of Lanham Act violations, they had no obligation to defend Big Bend under the "Trademark Infringement" exclusion. They also later reveal that the very purpose of their "Trademark Infringement" exclusion is to evade "Lanham Act liability." (*Id.* at 5.) Nationwide relies on two cases from outside of the Circuit to show that Big Bend's seeks to confuse this Court by characterizing PFS' counterclaim as "simple torts of libel and slander," which are not excluded under the policy, with PFS' actual claims of Lanham Act violations. (*Id.*) *See also Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215 (4th Cir. 2003); *Liberty Corp. Capital Ltd. v. Security Safe Outlet, Inc.*, 937 F. Supp. 2d 891 (E.D. Ky. 2013). The insured in *Superformance* was unsuccessful in construing the allegations against them as claims of disparagement and false advertising, because the plaintiffs raised unavoidably "straightforward trademark violations and unfair competition [claims] based on those violations." *Superformance*, 332 F.3d at 221. Similarly in *Liberty*, the insured's attempt to stretch their policy further than their coverage allowed was rejected because the insured was sued for trademark infringement, which fell clearly within the insurer's policy exclusion. *Liberty*, 937 F. Supp. 2d at 905-06.

In comparing the factual allegations of the counterclaim with the policy, the Court cannot say that PFS raised "straightforward" allegations of infringement of their intellectual property rights against Foliar and Ferrell. Under Count IX, PFS alleged that Foliar's false and misleading statements diminished the "goodwill associated with [PFS'] products" in violation of 15 U.S.C. § 1125(a)(1)(B). (Doc. 35 at ¶ 17.) Count X also alleged Ferrell committed an "intentional, unjustified and tortious interference with the advantageous business relationships of PFS." (*Id.* at ¶ 18.) In each instance, the only allegation of infringement was Foliar and Ferrell's act of informing PFS' customers that PFS was infringing on Foliar's patents. These allegations are irrelevant to the intellectual property rights of PFS. The Court

agrees with Big Bend in that PFS' counterclaim more accurately described a "personal and advertising injury" that arose from an "oral or written publication . . . disparages a person's or organization's goods, products or services." Thus, the "Trademark Infringement" exclusion is inapplicable here.[4]  Having found that Nationwide's Motion for Summary Judgment should be denied, the Court, as stated above, finds that Plaintiffs' Motion of Partial Summary Judgment (Doc. 34) should be, and is, **GRANTED.**

<u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment (Doc. 34) is **GRANTED**, and Defendant's Motion for Summary Judgment (Doc. 37) is **DENIED.**  The Court declares Nationwide had a duty to defend Big Bend in the underlying PFS Lawsuit.

**SO ORDERED**, this <u>21st</u> day of September, 2015.

<u>/s/ W. Louis Sands</u>
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[4] Furthermore, if Nationwide wished to exclude all Lanham Act claims, it could have done so by clearly stating its intentions within the policy.  *See Ace Am. Ins. Co. v. Truitt Bros., Inc.*, 655 S.E.2d 683, 684 (Ga. Ct. App. 2007) ("In construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean.") (citations omitted).