**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| FOLIAR NUTRIENTS, INC., | : | |
| BIG BEND AGRI-SERVICES, INC., | : | |
| and MONTY FERRELL, | : | |
| | : | |
|     Plaintiffs, | : | |
| | : | CASE NO.: 1:14-CV-75 (WLS) |
| v. | : | |
| | : | |
| NATIONWIDE AGRIBUSINESS | : | |
| INSURANCE COMPANY, | : | |
| | : | |
|     Defendant. | : | |
| _____ | : | |

**ORDER**

Pending before the Court is the Defendant's Motion for Summary Judgment on Plaintiffs' Bad Faith Claim Pursuant to O.C.G.A. § 33-4-6. (Doc. 61). For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 61) is **GRANTED.**

**PROCEDURAL BACKGROUND**

The complaint in the above-captioned matter was filed on May 13, 2014. (Doc. 1.) The Plaintiffs amended their complaint by Court order. (*See* Doc. 31.) On January 9, 2015, the Court denied as moot the Parties' cross-motions for summary judgment and set deadlines for revised summary judgment briefing in light of the amended complaint. (*See* Doc. 33.) The amended complaint added a count of bad faith. (Doc. 35 at ¶ 27.) The Court permitted the Parties to file one joint statement of material facts. (Doc. 33.) The Parties complied with the Court's order by timely filing cross-motions for summary judgment as well as responses and replies thereto. (*See* Docs. 34-42.) The Court granted Plaintiffs' Motion for Partial Summary Judgment (Doc. 34) and denied Defendant's Motion for Summary Judgment (Doc. 37). (Doc. 45.) Defendant Nationwide filed a notice of appeal from the Court's Order granting Plaintiffs' partial summary judgment. (Doc. 46.) Defendant subsequently voluntarily dismissed its Notice of Appeal (Doc. 52) and moved the Court for

1

leave to file out of time motions. (Doc. 53.) The Court granted Defendant Nationwide's Motion for Leave (Doc. 59) and Defendant filed the instant motion. The Plaintiffs timely filed a response and Defendant a reply. (*See* Docs. 62, 64.) As such, the Court finds that Defendant Nationwide's Motion for Summary Judgment is now ripe for review.

## FACTUAL BACKGROUND

### I.    Introduction

The following facts are derived from Defendant Nationwide's Motion for Summary Judgment (Doc. 61), Plaintiffs Response (Doc. 62), Nationwide's Reply (Doc. 64), all of which were submitted in compliance with M.D. Ga. L.R. 56, and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits submitted, all of which are construed in a light most favorable to the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### II.    Relevant Facts

Plaintiffs Foliar Nutrients, Inc. ("Foliar") and Big Bend Agri-Services, Inc. ("Big Bend") are Georgia corporations with their principal places of business in Georgia. (Doc. 35 at ¶¶ 1-2.) Plaintiff Monty Ferrell, who is an executive officer of Foliar, is an individual citizen and permanent resident of Georgia. (*Id.* at ¶ 3.) Nationwide Agribusiness Insurance Company ("Nationwide") is an insurance company authorized to conduct business in Georgia. (*Id.* at ¶ 4.) On May 10, 2013, Big Bend filed a complaint against a competitor, Plant Food Systems, Inc. ("PFS"), in the United States District Court for the Middle District of Florida, alleging primarily infringement of patents related to fertilizer products. (*Id.* at ¶ 7.) PFS filed an answer and counterclaim on August 13, 2013. (*Id.*)

PFS alleged that, "[i]n early 2013, Foliar's representatives in Florida contacted PFS' customers and told them that Foliar was in litigation with PFS and they should not purchase the PFS product." (*Id.* at ¶ 12.) PFS alleged that, at that time, Foliar and PFS were not in litigation. (*Id.*) PFS also alleged that "Foliar has wrongfully coerced and threatened the actual and prospective customers of PFS . . . that if they purchased and used the fertilizer products of PFS, they and their customers would be subjected to expensive and time

2

consuming litigation." (*Id.* at ¶ 13.) The counterclaim stated that Big Bend's actions "constitute false and misleading descriptions of fact and representations of fact about its own and PFS' product." (*Id.* at ¶ 14.) PFS asserted that the "misrepresentations have actually deceived or have had the tendency to deceive a substantial segment of Foliar's intended audience and were placed in interstate commerce by Foliar." (*Id.*) PFS alleged that it "sustained damages as a direct and proximate cause of Foliar's tortious acts and unfair competition," and "has been damaged and is likely to be further damaged as a result of these misrepresentations by the direct diversion of sales or by the lessening of the goodwill associated with its products." (*Id.* at ¶¶ 14-15.)

On August 23, 2013, Big Bend notified Nationwide of the counterclaim filed by PFS and demanded a defense of the counterclaim. (*Id.* at ¶ 8.) In a letter dated August 23, 2013, Nationwide informed Ferrell that it received a copy of the counterclaim and was currently investigating any obligations it had under Big Bend's policies. (Doc. 61-1 at ¶ 3.)

Big Bend did not receive a response from Nationwide regarding its August 23rd letter and sent a follow-up letter three months later in November. (*Id.* at ¶ 4.) Foliar and Ferrell sent Nationwide a letter on November 27, 2013. (Doc. 61-3.) In that letter, Foliar and Ferrell enclosed a copy of the Answer, Affirmative Defenses and Counterclaims filed by PFS in the ongoing suit. (*Id.*) Foliar and Ferrell restated their demand that Nationwide provide a defense. (*Id.*)

Nationwide responded in a detailed seventeen (17) page letter dated December 5, 2013, asserting that PFS's counterclaim did not trigger any coverage under either of the policies, and declining to participate in defense of Foliar and Ferrell. (Doc. 61-4.) The letter lists the allegations of PFS's counterclaim and the pertinent policy provisions of Plaintiffs' two policies. (*Id.*) In a section of the letter entitled "Coverage Position," Nationwide concluded its letter by stating reasons why each of the counterclaims are barred from coverage under the policies, despite Ferrell qualifying as an insured. (*Id.*)

In response to Nationwide's denial of their claim, Big Bend responded in a letter dated January 14, 2014. (Doc. 61-5.) Big Bend noted that it disagreed with Nationwide's coverage position and reiterated their demand for Nationwide to provide a defense. (*Id.*) Big Bend identified Nationwide's own language contained in the policies as grounds for

coverage, specifically the policies' definition of "personal and advertising injury" as inclusive of some of the claims against it by PFS. (*Id.*) In addition, Big Bend noticed Nationwide of its broad duty to defend and that Nationwide had a burden under Georgia case law to prove any exclusion applied to bar coverage. (*Id.*) Big Bend concluded its letter by stating "[i]n order to fully and effectively defend this matter, it is imperative that NABIC[1] accept its duty to defend immediately." (*Id.*)

Nationwide responded in a letter dated January 31, 2014, stating it considered the points raised by Big Bend's January letter but it maintained its position that its policies don't provide coverage for the counterclaim. (Doc. 61-6.) The letter specifically addressed Count X of the counterclaim, and in support of Nationwide's position to deny coverage of said claim, Nationwide relied on Florida case law and distinguished all Georgia case law cited therein. (*Id.*) Nationwide stated its reliance on Florida case law was due to no Georgia court having yet faced the issues presented in Plaintiff's coverage claim. (*Id.*) Nationwide claimed that, as pled, the counterclaim included intentional acts which were barred by coverage. (*Id.*)

Big Bend responded to Nationwide's January letter in a letter dated February 13, 2014. (Doc. 61-7.) Once again Big Bend stated that it respectfully disagreed with Nationwide's position and renewed its request that Nationwide defend and indemnify it in the PFS lawsuit. (*Id.*) Big Bend noted differences between the Florida case cited by Nationwide and Georgia case law. (*Id.*) Specifically, Big Bend apprised Nationwide that Georgia required the insurer to go beyond the allegations as pled and to conduct an investigation and consider the insured's factual contentions in determining whether the duty to defend is triggered. (*Id.*) Big Bend cited corresponding case law to support its contention. (*Id.*) Big Bend requested that Nationwide reconsider its coverage position and to support Nationwide's investigation, Big Bend denied any wrongdoing and included a copy of Foliar's Answer to PFS's counterclaim for review. (*Id.*) Big Bend demanded Nationwide immediately acknowledge its duty to defend in order to avoid further prejudice to its insureds. (*Id.*) Nationwide did not respond to Big Bend's February letter. (*Id.*)

After Big Bend made the several unsuccessful attempts noted above to persuade Nationwide to accept its coverage obligations in the PFS lawsuit, Big Bend filed a complaint

---

[1] Nationwide Agribusiness Insurance Company ("NABIC").

in this Court on May 13, 2014.  (Doc. *61-1* at ¶ 14.)  On August 11, 2014, Big Bend sent a letter to Nationwide advising that if Nationwide did not accept their duty to defend, Big Bend would amend its complaint to add a count for bad faith under O.C.G.A. § 33-4-6. (Doc. 61-8.) Big Bend gave Nationwide a deadline to respond by August 22, 2014. (*Id.*) On August 15, 2014, Nationwide responded to Big Bend's letter and replied that it had discussed the matter and declined to reverse its coverage position.  (Doc. 61-9.) Big Bend filed an amended complaint on September 8, 2014. (Doc. *61-1* at ¶ 17.)  Nationwide moved to strike the amended complaint as untimely. (*Id.* at ¶ 18.)  Big Bend then filed an Amended Motion for Leave to Amend Complaint (Docs. 21, 24), seeking the Court's permission to add the bad faith claim. (*Id.* at ¶ 19.)  On November 18, 2014, the Court granted Nationwide's motion to strike because Big Bend's amendment had been filed in violation of Fed. R. Civ. P 15. (Doc. 31.) But the Court also granted Big Bend's Amended Motion for Leave to Amend. (*Id.*)

## STANDARDS OF REVIEW

### I.    Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment where no genuine issue of material fact remains and the party is entitled to judgment as a matter of law.  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965

F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Chapman*, 229 F.3d at 1023. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to competent record evidence that would be admissible at trial. *See also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in the nonmovant's favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.    Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be

tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56.  As stated above, the Parties complied with the Federal Rules of Civil Procedure, the Local Rules, and the order of this Court by filing timely a motion for summary judgment, and a response and reply thereto.  The Court will now address this ripe motion.[2]

## ANALYSIS

Upon review, the Court finds that there is no genuine issue of material fact as to whether Big Bend timely satisfied the pre-suit demand requirement pursuant to O.C.G.A. § 33-4-6.  Big Bend, in a combination of three letters, did not make a timely "demand" upon Nationwide for bad faith purposes before filing the present suit. Big Bend provided sufficient proof of its claim, demanded payment (defense of a claim) when payment was immediately due, but failed to provide Nationwide sufficient notice of a lawsuit. Thus, the Court finds that as a matter of law Nationwide is entitled to summary judgment on Plaintiffs' bad faith claim.

"In diversity cases, a federal court applies the law of the forum in which it sits." *Broyles v. Bayless*, 878 F.2d 1400, 1402 (11th Cir. 1989).  "In a diversity of citizenship action involving construction of an insurance contract, Georgia law controls where the contract is made and delivered in Georgia even though the [incident] which gave rise to the claim occurred in another state."  *GEICO v. Dickey*, 340 S.E.2d 595, 596 (Ga. 1986).  The Parties agree Georgia law applies to the legal question of insurance contract and policy interpretation.  (*See* Docs. 36 at 6; 38 at 1.)  Thus, the Court will apply Georgia law to this contract interpretation case and notice requirement.

### I.   Liability Of Insurer For Damages and Attorney's Fees under O.C.G.A. § 33-4-6

Nationwide requests that this Court make a finding that Big Bend failed to make a timely pre-suit demand as required by § 33-4-6. (Doc. 61-10 at 1.) The Court agrees. Georgia

---

[2] The Court has by separate order already addressed the underlying claim. The underlying claim is discussed herein only as necessary in consideration of the bad faith claim which is now before the Court.

law provides a remedy for insureds that have been harmed by an insurer's bad faith denial of a claim. The statute declares:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

O.C.G.A. § 33-4-6.   The recovery of attorney's fees under O.C.G.A. § 33-4-6 serves as a penalty to insurers, and as such is disfavored in the law. *Love v. Nat'l Liberty Ins. Co.,* 121 S.E. 648, 653 (Ga. 1924). Further, a statute that acts as a penalty must be strictly construed. *Interstate Life & Accident Ins. Co. v. Williamson,* 138 S.E.2d 668, 669 (Ga. 1964).

Case law in Georgia essentially creates four (4) elements for a "demand" within the meaning of O.C.G.A. § 33-4-6. A demand is a statement, whether written or oral[3], to the insurer that (1) provides sufficient proof of a claim, (2) demands payment of said claim, (3) demands payment when payment is immediately due, and (4) provides notice to the insurer that it is facing a possible lawsuit. *See BayRock Mort. Corp. v. Chicago Title Ins. Co.,* 648 S.E.2d 433, 435 (Ga. 2007). The Court finds that upon the material facts alleged by the Parties, Big Bend arguably meets the first three elements of a demand. The crux of the issue presented before the Court is whether Big Bend satisfied the notice requirement, the fourth element of a demand, under O.C.G.A. § 33-4-6.

## II.   Whether Big Bend Satisfied the Notice Requirement Pursuant to O.C.G.A. § 33-4-6

"The purpose of the statute's demand requirement is to adequately notify an insurer that it is facing a bad faith claim so that it may make a decision about whether to pay, deny or further investigate the claim within the 60 day deadline. While Georgia law recognizes that no particular language is required to constitute a demand, the language must be sufficient to alert the insurer that bad faith is being asserted." *Primerica Life Ins. Co. v. Humfleet,* 458 S.E.2d 908, 910 (Ga. Ct. App. 1995)(citing *Cotton State Mut. Ins. Co. v. Clark,* 151 S.E.2d 780, 786

---

[3] *Hull v. Alabama Gold Life Ins. Co.,* 79 Ga. 93, 96 (1887)(finding that a bad faith statute does not prescribe any particular form in which demand shall be made, nor whether it shall be in writing or a verbal demand will suffice).

(Ga. Ct. App. 1966)(insured threatened to sue after claim denied by insurer)). Further, "[t]he mere specter of a lawsuit at a time when immediate payment is due appears to be enough to constitute a demand under O.C.G.A. § 33-4-6." *Byce v. Pruco Life Ins. Co.*, No. 1:09-CV-1912-RWS, 2011 U.S. Dist. LEXIS 6816, at *10 (N.D. Ga 2011)(citing *Mutual Sav. Life Ins. Co. v. Hines,* 100 S.E.2d 442 (Ga. Ct. App. 1957)). Multiple transactions over a time period can constitute a demand. *Id.* at *11 (citing *Mutual*, 100 S.E.2d at 472).

Nationwide contends that Big Bend failed to inform Nationwide before filing suit that they would seek a bad faith penalty pursuant to § 33-4-6. Nationwide argues that Big Bend failed to provide adequate notice because none of Big Bend's letters "contain any reference to a claim for bad faith, use of the term 'bad faith,' cite § 33-4-6, or even state that the insured is contemplating litigation." (Doc. 61-10 at 4.) Further, Nationwide claims that Big Bend's post-suit letter dated August 11th, while conceding that it does constitute a demand, was untimely because it was filed during the pendency of a lawsuit and cites *Massachusetts Mut. Life Ins. v. Montague*, 10 S.E.2d 279 (Ga. Ct. App. 1940). (Doc. 61-10 at 8.)

Here, there are three (3) pre-suit letters serving as the majority[4] of correspondence between Big Bend and Nationwide regarding Big Bend's demand in this case. On August 23, 2014, Nationwide informed Big Bend that it would be conducting an investigation into its claims. Big Bend's first letter came approximately three (3) months after Nationwide first received notice and submission of Big Bend's claim. Big Bend gave a summary of the allegations contained in the lawsuit and stated:

> Your insureds hereby demand that Nationwide Agribusiness defend them, without limitation, under any and all applicable policies, and indemnify them, if necessary, to the limits of the above-referenced policies, as well as under any and all other potentially applicable policies.
> We would appreciate it if you would acknowledge this **notice of claim** upon receipt. Thank you for your attention to this matter.

(Doc.61-3.)(emphasis added). Nationwide denied Big Bend's claim and sent a letter to Big Bend on December 5, 2013, advising that the claim was denied and why it was denied. Big Bend responded on January 14, 2014, and in pertinent part stated:

---

[4] The Court is aware that there was a prior verbal conversation between Ferrell and Nationwide regarding notice of PFS's counterclaim on or before August 23, 2013. (Docs. 61-2, 62-1.)

> We respectfully disagree with your coverage position, and object to both the declination and any purported reservation of rights. We reiterate our demand on behalf of Foliar and its executive officer, Monty Ferrell, that you defend and, if necessary, indemnify them under the Policies.

(Doc. 61-5 at 1.) Big Bend's letter then continued on to disagree with certain assertions in Nationwide's denial, and cited case law to support its contention that Nationwide's position was contrary to Georgia law. Big Bend concluded the letter by stating:

> In order to fully and effectively defend this matter, it is imperative that NABIC accept its duty to defend immediately.

(Doc. 61-5 at 4.) Nationwide sent a letter affirming its initial denial. (Doc. 61-6.) Big Bend sent a third letter stating:

> We respectfully disagree with your position and renew Foliar's request that NABIC defend and indemnify it in this matter by the Policies and applicable law.
> . . .
> The insureds have denied and continue to deny wrongdoing (intentional or otherwise). We have enclosed a copy of Foliar's Answer to PFS's Counterclaims for your review.
> In light of the foregoing, we ask that NABIC reconsider its denial and **immediately acknowledge its duty to defend in order to avoid further prejudice to its insureds.** Please understand that we must ensure that our client's interests are protected in this matter.

(Doc. 61-7.)(emphasis added). The majority of Big Bend's letter explained and cited case law as to why the basis of Nationwide's denial went against Georgia law. Nationwide did not respond to Big Bend's third letter. Eighty-nine (89) days later, Big Bend filed the present case on May 13, 2014. During the pendency of the present case, Big Bend sent Nationwide a post-suit letter on August 11, 2014. (Doc. 61-8.) The entire letter states:

> We are writing to let you know that we plan to amend our complaint in the present coverage litigation to add a count for **bad faith** under **Ga. Code. Ann. § 33-4-6,** unless NABIC immediately changes its position and accepts its duty to defend. We believe NABIC's defense obligation is clear under the policy and applicable law and therefore, a bad faith claim is appropriate.
> If we do not hear from you by August 22, 2014 we will assume that NABIC remains unwilling to defend and we will proceed to file our amended complaint.

(*Id.*)(emphasis added). On August 15, 2014, Nationwide responded:

> Thank you for your letter of August 11, 2014. I have discussed the contents of
> your letter with Nationwide Agribusiness Insurance Company ("Nationwide")
> and it has authorized me to decline your demand that Nationwide reverse its
> position and assume the defense of the counterclaim filed against your client.

(Doc. 61-9.)

Here, Big Bend's post-suit notice of bad faith was drafted too late to serve as timely
notice. The Court cannot find timely compliance based on it alone. In *Montague*[5], the insured
filed suit on September 1, 1939, and the original suit failed to allege any demand and refusal
to pay made more than sixty days previously thereto and did not seek to recover damages
and attorney's fees. *Montague*, 10 S.E.2d at 285. The insured amended his petition on
October 19, 1939, and alleged that on July 29, 1939, a demand was made upon the insurer to
pay the loss, the insured refused to pay said loss in bad faith and sixty days has lapsed since
the demand was made. *Id.* The insurer objected to the amendment on the ground that the
insured sought to assert a claim which the insured "had no right to enforce at the time of
filing his original petition." *Id.* Georgia Court of Appeals sustained the insurer's objection. *Id.*
at 286; *see also Useinov v. Athena Star*, No. 2011EV011967-J, 2012 Ga. State LEXIS 640 at *4
n. 4 (State Ct. Ga. 2012)(finding amended complaint containing bad faith claim untimely
where it was not added until after the expiration of the sixty day period).

Accordingly, it appears that an amendment to a complaint alleging bad faith under
§ 33-4-6, must relate back to the date of the original filed complaint and the insured must
prove a "demand" for bad faith purposes was made prior to filing the original suit, not prior
to the amended complaint. The Court agrees with Nationwide that Big Bend's post-suit
letter was untimely for the purpose of the notice requirement. Since Big Bend's August 11th
demand letter was drafted after the original complaint had been filed, it is untimely pursuant

---

[5] Although this case is over 70 years old, it has recently been cited in *Prime Mgmt. Consulting & Inv. Servs., LLC v. Certain Underwriters at Lloyd's London,* No. 1:07-cv-1578-WSD, 2007 U.S. Dist. LEXIS 94989 (N.D. Ga. 2007) and *Bowers v. Continental Ins. Co.,* 734 F.2d 1574, 1578 n. 11 (11th Cir. 1985)("An insured may salvage a premature suit for statutory damages by dismissing it and refiling."). Thus the Court considers this case to still be binding precedent. Further, although the case references O.C.G.A. §56-706, which was in effect at that time, it is a prior version of O.C.G.A. § 33-4-6. O.C.G.A. §56-706 still required there to be a demand for the amount due on the policy, and a refusal to pay, 60 days before the suit is brought to seek a claim for bad faith.

to O.C.G.A. § 33-4-6. Thus, the Court must disregard Big Bend's post-suit letter and only consider Big Bend's three pre-suit letters, taken together, in determining whether Big Bend satisfied the notice requirement pursuant to O.C.G.A. § 33-4-6.

The Court finds that Big Bend's three pre-suit letters would not impart upon the reasonable insurance company that the letters constituted a bad faith noticed demand and expect the sixty-day window to open. The present case is very similar to *Arrow Examiners, Inc. v. Zurich American Insurance Co.,* 136 F.Supp.2d 1340 (N.D. Ga. 2001). In *Arrow*, the insured's only purported demand letter discussed the insurer "stonewalling" the insured in its attempts to obtain information about its claims and voiced displeasure about the manner in which the insurer had been handling the insured's claim. *Id.* at 1356. The letter made clear that the insured believed the insurer paid excessive sums of money for unauthorized claims and that it planned to still hold the insurer liable for the remainder of the claims that were not yet processed. *Id.* The court held that the letter failed to meet the procedural prerequisites for two reasons. *Id.* at 1357. First, it did not contain any reference whatsoever to a claim for bad faith, the term bad faith, cite the applicable statute as shorthand, or even state that the insured is contemplating litigation against the insurer. *Id.* Second, the letter failed to request the insurer pay any specific loss. *Id.*

Big Bend attempts to distinguish its three pre-suit letters from the purported demand letter in *Arrow*. Big Bend asserts that its letters "contain clear and specific demands that Nationwide immediately defend it in order to avoid further prejudice to Big Bend, along with detailed discussions of the coverage-triggering allegations and relevant law." (Doc. 62 at 10.) The Court agrees that Big Bend's letters do differ in those respects but even so, Big Bend's letters still fail for the same reason the purported demand letter in *Arrow* failed: lack of sufficient notice of a bad faith claim or litigation. Throughout the entirety of Big Bend's three letters, Big Bend never mentions any reference to bad faith. The letters do not mention the term "bad faith," they do not cite the applicable statute as shorthand, and they do not state that Big Bend is contemplating litigation against Nationwide for its refusal to defend, or threaten to sue or even take Nationwide to court for its failure. Because O.C.G.A. § 33-4-6 serves as a penalty, it must be strictly construed. Therefore, under such a strict construction standard, and Georgia case law being resolute in that an insurer is to receive notice of a

potential bad faith claim so it may determine how it wants to proceed with the claim, notice is of the upmost importance. *See Primerica*, 458 S.E.2d at 772 ("Purpose of statute's demand requirement is to adequately notify an insurer that it is facing a bad faith claim so that it may make a decision about whether to pay, deny or further investigate claim within 60-day deadline."). The Court finds that simply informing the insurer that its position is contrary to the law is not sufficient notice.

Big Bend further attempts to save its deficient demand by claiming that Nationwide's denial of its post-suit demand letter shows that Nationwide was not prejudiced by any lack of notice. However, Big Bend fails to cite any case law for its proposition. The Court finds this line of reasoning unpersuasive, as the notice standard is pre-suit, not post-suit. Big Bend also contends that Nationwide had far more than 60 days to investigate, almost nine months. However, O.C.G.A. § 33-4-6 does not make an exception to its notice requirement for claims that have been pending or delayed for over 60 days. In fact, Georgia case law still requires the lapse of 60 days even when the insurer has denied a claim. As such, the Court finds that Big Bend's demand pursuant to O.C.G.A. § 33-4-6 is deficient.

<u>CONCLUSION</u>

Big Bend failed to satisfy the prerequisite demand requirement pursuant to O.C.G.A. § 33-4-6 by not providing sufficient notice of a bad faith claim or litigation to Nationwide before filing its initial complaint. Defendant Nationwide's Motion for Summary Judgment (Doc. 61) as to Plaintiffs' bad faith claim is hereby **GRANTED**.

**SO ORDERED**, this <u>30th </u>day of September, 2016.


**/s/ W. Louis Sands**
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**